MERKEL ASSOCIATES, INC. and Robert H. Merkel, Individually, Plaintiffs,

v.

BELLOFRAM CORPORATION, John F. Taplin, Donald W. Comstock and Bellofram Patents, Inc., Defendants.

Civ. No. 74-373.

United States District Court,
W. D. New York.

Sept. 15, 1977.

Grover R. James, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for plaintiffs.

James W. Smyton, Ogden R. Brown, Brown, Kelly, Turner, Hassett & Leach, Buffalo, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiffs herein complain that defendants breached and caused to be breached certain duties imposed upon defendant Bellofram Corporation in and by a certain written contract with plaintiffs and upon said defendant and defendant John F. Taplin in and by a certain unwritten agreement with plaintiffs and that defendants conspired tortiously to harm plaintiffs in their rights under said contracts and otherwise. Plaintiffs are residents and citizens of New York State and this judicial district and all defendants are residents in and citizens of the State of Massachusetts or, at least, not residents in or citizens of New York State. This court's jurisdiction of the subject matter is bottomed on such diversity and an appropriate amount in controversy.

Defendants have questioned this Court's jurisdiction over the persons of the defendants. It affirmatively appears that each of the defendants was served outside of the State of New York. Service was effected upon the two corporations and defendant Comstock by serving "Mary Chilani Office Mngr" and upon defendant Taplin by serving his wife. All such services were made in Massachusetts. No complaint has been made to these particular services other than the basic assertion that none of the defendants was doing business or otherwise present in New York State within the purview of section 302 of New York's Civil Practice Law and Rules ("CPLR § 302") or any other provision of law. Additionally, it is set forth that defendant Bellofram Patents, Inc. ("Patents") was not present or doing business in Massachusetts.

Service sufficient to the acquisition of jurisdiction over the person of a defendant is controlled by rule 4(d) of the Federal Rules of Civil Procedure which provides in pertinent part as follows:

"* * * Service shall be made as follows:

"(1) Upon an individual by leaving copies [of the summons and of the complaint] at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein * *.

* * * * * *

"(3) Upon a * * * foreign corporation * * * by delivering a copy of the summons and of the complaint to * * a managing * * * agent * * *.

* * * * * *

"(7) Upon a defendant of any class referred to in (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served * * * in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

Not complaining of the "manner" of service of process, defendants do assert that there can be no personal jurisdiction over any of them by the courts of New York State and, consequently, by a federal court sitting in New York State where the subject matter jurisdiction is premised on diversity of citizenship. Plaintiffs point to CPLR § 302(a) as entitling New York courts and this Court to exercise personal jurisdiction over each defendant. Thereunder this Court, sitting in New York State in this diversity action, "may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent:

"1. transacts any business within the state; or

"2. commits a tortious act within the state * * *; or

"3. commits a tortious act without the state causing injury to person or property within the state * * * if he

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce * * *."

Before considering the nuances of the above and the adequacies or inadequacies of the complaint's allegations as augmented by the many affidavits which have been filed, the question of jurisdiction in this Court of the person of defendant Bellofram Corporation is to be resolved. Defendants' motion asserted that "this Court lacks jurisdiction over *any* of the defendants and that *none* of the defendants are [sic] subject to service of process within the Western District of New York." (My emphasis). Plaintiffs' memorandum in opposition states (p. 1) that "Defendants' counsel has now agreed that jurisdiction is proper over Bellofram Corporation" and only defendants Taplin, Comstock and Bellofram Patents, Inc. are spoken of in defendants' supporting memorandum as moving for dismissal (pp. 1, 17–18). Nor could there be any contrary ruling by me. Defendant Bellofram Corporation was transacting business within the State of New York and in the Western District of New York through its agents—e. g., plaintiff Merkel and defendants Taplin and Comstock. Consequently, the motion to dismiss as to this defendant is hereby denied.

Determination of the motion as to the remaining defendants requires some sorting out of the various causes of action set forth in the complaint. The second cause relates to and seeks damages for allegedly illegal termination by letter dated January 31, 1973 of plaintiffs' representation of defendant Bellofram Corporation for purposes of effecting sales in that portion of the State of New York which lies to the north of and includes the Counties of Delaware, Greene and Columbia. This portion includes the whole of the Western and Northern Districts of New York and part (Greene County and Columbia County) of the Southern District of New York. The said representation was pursuant to a certain Sales Agency Agreement dated October 16, 1967 between plaintiff Robert Merkel and defendant Bellofram Corporation. This agreement was subsequently amended by the parties October 1, 1968 and November 22, 1972. The other three causes of action relate to this contract.

The first cause seeks damages for a breach of the Sales Agency Agreement by Bellofram Corporation in that it disclosed to third parties "proprietary information". The specific portion of the agreement which is alleged to have been breached provides, in part:

"7. The AGENT [Merkel] and BELLO-FRAM [Corporation] agree that during the term of this AGREEMENT or thereafter they will not disclose to others or make use of except for the purposes of this AGREEMENT any knowledge or information supplied by the other party of a proprietary nature, and each agrees to require his employees to abide by the terms of this paragraph."

The first cause also includes claims against all the defendants that they conspired to convert and did convert to the use and benefit of all the defendants except Comstock "proprietary information" of the plaintiffs. As to Patents it is specifically alleged that Taplin used such information to obtain patents in the name of Patents and that Patents accepted and used said patents.

The fourth cause seeks damages for alleged conspiracy to interfere and for interference by the defendants in plaintiffs' contractual relations with Bellofram Corporation. No specific act by any defendant is alleged.

The third cause seeks damages for an alleged breach of an oral contract first made in 1962 between plaintiff Merkel and defendant Taplin, individually and as Chairman of Bellofram Corporation. It is further alleged that this oral contract was reaffirmed by Taplin as late as September of 1972. Alternatively, the third cause claims that defendants by misrepresentations fraudulently induced plaintiffs to expend time and money to perform the Sales Agency Agreement which plaintiffs would not otherwise have done.

It is within the framework of the above causes of actions and claims that the question of personal jurisdiction is to be determined.

 Inasmuch as plaintiffs seek to invoke CPLR § 302 to obtain jurisdiction over the persons of defendants, it is they who must prove sufficiently the existence of facts lending themselves to personal jurisdiction over the defendants. *Evans v. Eric,*

370 F.Supp. 1123 (S.D.N.Y.1974); *Lamarr v. Klein,* 35 A.D.2d 248, 315 N.Y.S.2d 695 (1st Dept.1970); *United States v. Montreal Trust Company,* 358 F.2d 239 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); *Unicon Management Corp. v. Koppers Company,* 250 F.Supp. 850 (S.D.N.Y.1966). If CPLR § 302(a)(1) (the transaction of business section) is involved, plaintiffs must demonstrate that the defendant was engaged in a purposeful activity within the state and that plaintiffs' claim arises from that activity. *Longines-Wittnauer Watch Co. v. Barnes and Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). If CPLR § 302(a)(2) or § 302(a)(3) is involved, plaintiffs must demonstrate that the defendant committed within or without the state a specific act which plaintiffs claim to be tortious. *Evans v. Planned Parenthood Etc.,* 43 A.D.2d 996, 352 N.Y.S.2d 257 (3d Dept.1974).

Generally, plaintiffs' complaint does not allege with any particularity facts which would support personal jurisdiction and their affidavits do not correct this deficiency. Plaintiffs rely solely on their complaint and affidavits and this Court is limited to the facts therein alleged.

Before reaching the substance of the motion, a comment is necessary. The plaintiffs have frequently used the collective term "defendants" in the complaint, even where the term was inappropriate. For example, in the second cause of action which is for breach of contract, it is alleged that *"defendants"* terminated the Sales Agent Agreement, although the agreement at most was between plaintiffs and Bellofram Corporation. Therefore, unless the facts support the implication that the term "defendants" includes all the defendants, the term will be given its most restrictive application.

The pleadings show that Patents was incorporated under the laws of the State of Delaware and maintains its principal office for business at West Newton, Massachusetts.[1] Patents exists for the purpose of

1. Although the November 11, 1974 affidavit of Taplin disputes that Patents has such an office, there is no claim that the principal place of business is anywhere else.

licensing patents outside the United States and arranging for the receipt and interchange of technical data with foreign sublicensees. For the purposes of CPLR § 302(a)(3)(ii), Patents derives substantial revenue from international commerce.

The only specific activity in which Patents is alleged to have been a participant is the conversion of "proprietary information". It is alleged that defendant Taplin converted certain "proprietary information" and obtained patents for the same, " * * * in the name of his wholly owned corporation, the defendant, Bellofram Patents, Inc., and said Bellofram Patents, Inc. accepted and used said patents, without any right to the same." (Complaint, ¶ 21). The alleged patents involved three items, a "Xerox Puffer", a "Symington Wayne Rotary Actuator" and the "High Temperature Flex Weave Fabric". Although the existence of these patents is denied by defendant Taplin, plaintiffs do not refer to any specific patent issued by any patent office incorporating the concepts of those items. The failure to demonstrate the existence of any such patents seriously undermines the allegation that Patents was the author of any tortious act within or without the State of New York.

▆▆ Plaintiffs further urge that Patents' corporate identity should be disregarded because of Taplin's alleged control of the corporation. Even if it is assumed that Taplin was the sole or majority stockholder of Patents, that by itself is insufficient to require that the corporate veil be pierced. *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970). There is a recognized reluctance of New York courts to "pierce the corporate veil". *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966); *United States v. O'Connell*, 496 F.2d 1329 (2d Cir. 1974). There must be, where there is a claim of jurisdiction, sufficiently particularized factual statements showing that Taplin is actually doing business in his individual capacity. Such statements are here absent. Therefore, Taplin's actions cannot be attributed to Patents unless Taplin was the "agent" of Patents.

▆▆ Except for the allegation of converting "proprietary information" which was discussed above, Taplin or any other defendant could only have acted as the "agent" [2] for Patents if he committed some act in furtherance of a conspiracy in which Patents was a co-conspirator. There are at most two possible conspiracies. The first is a conspiracy to convert plaintiffs' "proprietary information" and the second is a conspiracy to interfere with plaintiffs' contractual relations with Bellofram Corporation. Under certain circumstances the acts of a co-conspirator within New York may give rise to jurisdiction over another co-conspirator in another state. *American Broadcasting Co., Inc. v. Hernreich*, 40 A.D.2d 800, 338 N.Y.S.2d 146 (1st Dept.1972). A mere allegation of conspiracy, without a prima facie factual showing of its existence, cannot be the basis of such personal jurisdiction. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975); *Chemical Bank v. World Hockey Association*, 403 F.Supp. 1374 (S.D.N.Y.1975). Likewise, as to the assertion of jurisdiction under section 302(a)(3)(ii), some prima facie showing of conspiracy must be furnished. I find no such showing of Patents' involvement in either possible conspiracy.

At most the affidavits and complaint demonstrate the following as to the alleged conspiracy to convert "proprietary information". It is alleged that Merkel contributed to the development of certain items—i.e., the "Xerox Puffer", the "Symington Wayne Rotary Actuator" and the "High Temperature Flex Weave Fabric"—and that the information was disclosed to Bellofram Corporation's customers by Bellofram Corporation in breach of the Sales Agency Agreement with Bellofram Corporation. The participation of Patents, or of Com-

---

**2.** The term "agent", as used in the jurisdictional sense, is broader than the meaning given in the normal "principal-agent" concept.

stock or Taplin in their individual capacities, is highly speculative. Merely showing the business interrelationship of the defendants without more is insufficient. To hold otherwise would be to subject all interrelated groups to charges of conspiracy when any one of the group acts.

As to the conspiracy to interfere with contractual relations, even less is alleged as to Patents' involvement in a conspiracy. It is only Taplin's relationship to Patents as the sole or majority stockholder that forms the basis for making Patents a member of the conspiracy. As noted before, this is an insufficient reason or basis for ignoring the individual entity of Patents. As to Patents, the complaint is dismissed for lack of personal jurisdiction.

John Taplin is the Chairman of the Board of Directors and the Treasurer of Bellofram Corporation and the President, the Treasurer and a Director of Patents. It is alleged, although denied by Taplin, that he is the sole stockholder in Patents.

Donald Comstock is the President of Bellofram Corporation and was the signer for Bellofram Corporation on the Sales Agency Agreement, the amendments to the agreement and the letter of termination. Comstock is not a stockholder in either defendant corporation.

■■■■ As to the allegations of conspiracy between and among Taplin, Comstock and the defendant corporations, a corporation cannot conspire with its agents or officers, *Milburn v. Blackfrica Promotions, Inc.*, 392 F.Supp. 434 (S.D.N.Y.1974), and co-employees of a corporation cannot conspire among themselves if the only connection is through their corporate-employer's affairs. *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66 (2d Cir.), *cert. denied* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

■■■ As noted above, there are only two conspiracies alleged. Except for the allegation that Taplin converted certain "proprietary information", no specific acts are offered to indicate that Taplin or Comstock acted other than through their corporate-employer's affairs in furtherance of any conspiracy. When inspected, even Taplin's alleged act of conversion is not shown to be of a personal nature. Plaintiffs neither refer to any patents issued in Taplin's name nor explain how Taplin otherwise attempted to derive personal benefit from the information. Because it has not been shown that two or more persons could have entered into any agreement or concerted activity, personal jurisdiction over Taplin and Comstock cannot be founded upon their alleged membership in any conspiracy.

■■■■ It remains to be determined whether there are sufficient facts alleged as to Taplin's or Comstock's corporate or personal activities to support personal jurisdiction. The defendants urge that the activities of the individual defendants as corporate officers cannot support personal jurisdiction over them in their individual capacities. *Fashion Two Twenty, Inc. v. Steinberg*, 339 F.Supp. 836 (E.D.N.Y.1971); *Unicon Management Corp. v. Koppers Company, supra*. Also, *Path Instruments Internat'l Corp. v. Asahi Optical Co.*, 312 F.Supp. 805 (S.D.N.Y.1970); *Yardis Corp. v. Cirami*, 76 Misc.2d 793, 351 N.Y.S.2d 586 (Na.Co.S. Ct.1974); *Lehigh Valley Industries, Inc. v. Birenbaum, supra*. The purpose of such a "fiduciary shield" from long-arm jurisdiction is to protect such corporate officers from unreasonable and unjust subjection to personal jurisdiction, not to protect them from liability. This shielding should not be unlimited. Whether personal jurisdiction should exist must be measured by inquiring whether the exercise of such jurisdiction comports with fair play and substantial justice. I agree that where non-resident corporate officers visit the state for corporate business purposes, such course of conduct within the state will not be considered sufficient to constitute "doing business" under CPLR § 301, or transacting business under CPLR § 302(a)(1), or doing or soliciting business, or engaging in any other persistent course of conduct contemplated by CPLR § 302(a)(3). Nor would I consider in applying the revenue tests under CPLR § 302(a)(3)(i) and (ii) the source of revenue of the corporation or the interstate or inter-

national nature of the corporate officers' activities.[3] The "fiduciary shield" is, however, inappropriate where a corporate officer "commits a tortious act within the state" within the purview of CPLR § 302(a)(2). See, *Lutz Feed Co., Inc. v. Audet & Company, Inc.*, 72 Misc.2d 28, 337 N.Y.S.2d 852 (Del.Co.S.Ct.1972). If a foreign corporation sends an employee into New York State to deliver certain goods and the employee physically assaults and batters a citizen of New York State, certainly there is no question that New York could exercise jurisdiction over such an employee. Conceptually, there is no reason to treat a corporate officer differently because he commits a "business tort" in New York. Similarly, in light of the "regularly does or solicits business", "persistent course of conduct" and "substantial revenue" tests of CPLR § 302(a)(3)(i) and (ii), a tortious act committed by a corporate officer outside the state causing injury in the state may result in personal jurisdiction without causing problems of constitutional magnitude. Because it would be the rare corporate officer whose personal contacts or revenue would meet the tests of CPLR § 302(a)(3), the type of injustice noted in *Weller v. Cromwell Oil Company*, 504 F.2d 927 (6th Cir. 1974),—namely, the subjecting of corporate officers to personal jurisdiction in distant forums whenever they make telephone calls or write letters to customers who later claim that they constitute misrepresentations—would not occur.

I do not find any of the cited cases dispositive of the question whether the tortious acts of a corporate officer as an agent for the corporation may subject such officer to personal jurisdiction under New York's long-arm statute. Except for *Fashion Two Twenty, Inc. v. Steinberg, supra,* none of the decisions deals with tortious acts under section 302(a)(2) or (3) but each instead has concern with the criteria "doing business", "transaction of business" or "does or solicits business or engages in any other persistent course of conduct". Although defendants state that in *Unicon Management Corp. v. Koppers Company, supra,* the question arose as to whether defendants had committed tortious acts within the meaning of CPLR § 302(a)(2), the decision was reached in the context of determining whether tortious acts committed by other employees of a corporation in New York could be used to subject to personal jurisdiction the corporate officers who sent the employees into the state. *Cf., Weller v. Cromwell Oil Company, supra,* at 930. The question whether tortious acts committed outside the state could result in personal jurisdiction was not considered because *Unicon* was decided prior to the effective date of the amendment which added CPLR § 302(a)(3).

In *Fashion* the facts directed the court's attention to those provisions of section 302 which permit personal jurisdiction over persons without the state if they have either transacted business within the state or committed a tortious act outside the state which has caused injury within the state. Nothing before the court required a holding as to tortious acts committed within the state. The court's holding as to personal jurisdiction over individual defendants was as follows:

"The individuals may have transacted business within New York but the evidence shows that if they did so, they did so as agents of the corporate defendants. This, without more, will not suffice. * * *.

"With regard to whether the individual defendants have committed a tort within the meaning of § 302 C.P.L.R., it is to be noted that an action alleging violations of the antitrust laws is a claim for injuries sustained, and therefore in the nature of a tort. * * * Nevertheless, it is to be noted that none of the individual defendants have [sic] come to New York more than occasionally, and that the harmful results of which plaintiff complains did not occur in New York. As the New York Court of Appeals stated in *Feathers*

---

**3.** This is in line with the principle that personal jurisdiction over a corporate agent cannot be the result of personal jurisdiction over the corporation. *Path Instruments Internat'l Corp. v. Asahi Optical Co., supra,* at 810.

*v. McLucas,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), even where the results of the tortious act are felt in New York, the 'mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here, within the sense of the statutory wording.' Consequently, unless some act is committed within New York by the defendants to which the appellation 'tortious' may be attached, mere injury within the state is insufficient as a ground for jurisdiction. There is no evidence of any such act taken by the individual defendants themselves, and not as agents of their corporations. Jurisdiction is thus not present, and the action must be dismissed as to all the individual defendants with the exception of Steinberg." *Fashion Two Twenty, Inc. v. Steinberg, supra,* 841–842.

Although a correct result was reached in *Fashion,* the court's reliance on *Feathers v. McLucas* was misplaced inasmuch as its holding had been undermined by the subsequent amendment which introduced section 302(a)(3) into the law of New York. *See,* C302:17 and C302:19 of the *Practice Commentaries* following CPLR § 302. Such reliance appears to have been inadvertent in view of the court's correct notation earlier on the same page that "the relevant provisions of [CPLR § 302] permit personal jurisdiction to be had over persons without the state if they have * * * committed a tortious act outside the state which has caused injury within the state" and unnecessary in view of the above-quoted holding that "the harmful results of which plaintiff complains did . not occur in New York." Having found that no injury occurred and that there was not any transaction of business in New York, further comment was unnecessary to the holding that personal jurisdiction was absent.

■ There is no constitutional violation in subjecting corporate officers to New York State personal jurisdiction where they have committed a tort in New York as an agent of the corporation, or where they have committed a tort outside New York as an agent of the corporation and injury has occurred in New York and there are sufficient independent personal contacts with New York to support jurisdiction. The "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny[4] are met. Hence, " * * * it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This requirement is also met.

However, under this application of the long-arm statute personal jurisdiction over the individual defendants has not been shown. Plaintiffs allege no facts that would indicate that allegedly tortious acts were committed within or without New York by Taplin or Comstock. Plaintiffs do not allege whether the unrelated contacts or revenue tests of section 302(a)(3)(i) or (ii) are met. Therefore, even if sufficient tortious acts committed by Taplin or Comstock were alleged, it must be assumed that they were committed without New York but that there are insufficient personal contacts to permit personal jurisdiction.

There is a threshold failure by plaintiffs to establish any basis for subjecting Taplin or Comstock to personal jurisdiction under New York's long-arm jurisdictional statute, CPLR § 302. Therefore, the complaint as to defendants John F. Taplin and David W. Comstock is dismissed, as it is also dismissed to defendant Bellofram Patents, Inc.

So ordered.

4. *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Shaffer v. Heitner,* —— U.S. ——, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).