**Nora SWAFFORD, Plaintiff-Appellant,**

v.

**Dick AVAKIAN, Defendant-Appellee.**

No. 78–1803
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1978.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Frank M. Gleason, James A. Secord, Rossville, Ga., for plaintiff-appellant.

Smith, Shaw, Maddox, Davidson & Graham, James D. Maddox, Rome, Ga., for defendant-appellee.

Before THORNBERRY, GEE and FAY, Circuit Judges.

PER CURIAM:

The sole question presented in this appeal is whether the district court was correct in dismissing appellant's action for lack of personal jurisdiction.

Appellant alleges that she met appellee in California while she was living there and where a relationship developed with appellee who proposed marriage to her. Thereafter, appellant became disenchanted with the situation and moved to Georgia where her parents resided. She further alleges that after she arrived in Georgia appellee made phone calls and wrote letters expressing his love for appellant and asking appellant to marry him. Appellant and her three children went back to California and moved into appellee's house. Shortly after her arrival in California, a formal engagement took place. Two weeks later, appellee terminated the engagement and appellant and her three children moved back to Georgia.

Appellant filed a complaint in the United States District Court for the Northern District of Georgia claiming damages arising out of an alleged breach of contract to marry and for fraudulent misrepresentation. Appellant sought to serve appellee with process in California under the Georgia Long-Arm Statute [1] and appellee filed a motion to dismiss on the grounds that the district court lacked personal jurisdiction. This motion was granted.

In this appeal, appellant alleges that the district court improperly dismissed the action for lack of personal jurisdiction under the Georgia Long-Arm Statute.

I. Breach of Contract

The first count of appellant's complaint is one for breach of contract to mar-

1. Ga.Code Ann. 24–113.1. *Personal jurisdiction over nonresidents of State.*—A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

    (a) Transacts any business within this State; or

    (b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

    (c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; or

    (d) Owns, uses or possesses any real property situated within this State.

ry. There have been no allegations by appellant that subsections (a) or (d)[2] of Georgia's Long-Arm Statute are applicable. Instead, appellant relies upon subsections (b) and (c) to support both the count for breach of contract and the count for fraudulent misrepresentation. It is clear, however, that subsections (b) and (c) deal only with "tortious conduct." To base an action for breach of contract on either of these two subsections would be erroneous.

Nor can appellant properly allege jurisdiction over her contract claim on the basis of subsection (a) which contemplates the transaction of business within the state.[3] Activity under subsection (a) must be more extensive than activity which will support a finding of a "contact" with Georgia for the purpose of exercising jurisdiction in a tort claim under subsection (b). *Shellenberger v. Tanner*, 138 Ga.App. 399, 227 S.E.2d 266 (1976). In interpreting subsection (a), this Court held in *Pennington v. Toyomenka, Inc.*, 512 F.2d 1291 (5th Cir. 1975) that acts of transmitting communications from New York to Georgia by means of telephone and mail and sending goods into Georgia, paid by checks drawn on Atlanta banks, were not sufficient to acquire jurisdiction. *Id.* at 1292. In our case, the only contacts appellee was alleged to have had with Georgia were several phone calls and letters from California to appellant in Georgia. These contacts are insufficient for jurisdiction under subsection (a) as set out in *Pennington.*

## II. Fraudulent Misrepresentation

The second count of appellant's complaint is a tort count for fraudulent misrepresentations allegedly made by appellee to appellant regarding his intention to marry her. Subsections (b) and (c) both deal with tortious conduct.[4]

In interpreting subsection (b), the Court of Appeals of Georgia has set out a three-fold test:

1. The nonresident must purposely avail himself of the privilege of doing some act or consummating some transaction with or in the forum.
2. The plaintiff must have a legal cause of action.
3. If the first two requirements are met, the exercise of jurisdiction over the nonresident must be reasonable.

*Shellenberger v. Tanner*, 138 Ga.App. at 407, 227 S.E.2d at 272. The court in *Shellenberger* stated that "minimum contact" is required such that its use as the predicate for establishing personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* In other words, the exercise of jurisdiction based upon minimum contact must be reasonable. This test for reasonableness has been frequently analogized to that which is applicable in a forum non conveniens issue. *Id.*

Clearly, to make appellee defend an action in Georgia, when he has never trav-

---

**2.** Nothing on the record would support jurisdiction under subsection (d), dealing with real property, for either the contract count or the tort count.

**3.** We need not resolve the question of whether a contract to marry is a business transaction for purposes of subsection (a), for the requisite contacts with the State of Georgia for jurisdiction under this subsection are clearly not present in this case.

**4.** In *Coe & Payne Company v. Wood-Mosaic Corporation*, 125 Ga.App. 845, 189 S.E.2d 459 (1972) the Georgia Court of Appeals considered the applicability of subsection (c) to certain activities which took place prior to the amendment by the legislature which added subsection (c). It held that subsection (c) could not be applied retroactively. It further held that subsection (b) did not cover extraterritorial tortious conduct causing injury in Georgia. The Supreme Court of Georgia granted certiorari but did not pass on the issue of the retroactivity of subsection (c). Instead, it reversed the lower court's interpretation of subsection (b) saying: ". . . a 'tortious act' is a composite of both negligence and damage, and if damage occurred within the state then the tortious act occurred within the state within the meaning of subsection (b) of the Long Arm Statute." 230 Ga. 58 at 60, 195 S.W.2d 399 at 400–401.

eled to Georgia and where his only contacts with Georgia were several phone calls and letters, would be unreasonable. Appellant lived in California, moved to Georgia and then moved back to California to live with appellee. The engagement and termination of the engagement took place in California. We believe the district court had ample grounds for finding that jurisdiction would not be reasonable under the facts alleged in this case.[5]

Appellant has relied on the case of *Thorington v. Cash*, 494 F.2d 582 (5th Cir. 1974), to support appellant's position. In *Thorington*, appellant alleged that letters were sent and phone calls were made by appellee to appellant in Georgia and that on certain occasions appellee informed appellant he was calling from within the state of Georgia. Furthermore, the partnership agreement was mailed by appellee to appellant in Georgia who then executed the agreement, had it notarized and returned it by mail to appellee in Florida. This Court held in *Thorington* that appellee's contacts were sufficient to satisfy both subsection (b) of the Georgia Long-Arm Statute and the "minimum contacts" requirement of the Due Process Clause. However, this Court in *Thorington*, made it clear that its holding was limited "to the application of subsection (b) (tortious act within) to conduct which occurs prior to July 1, 1970, the effec-

tive date of subsection (c) (act without/tortious injury within)." *Id.* at 586. The Court stated:

> We do not determine whether Cash's contacts with Georgia would be sufficient to satisfy the seemingly more restrictive requirements of subsection (c) [footnote omitted] (conduct without/tortious injury within—post-1970) since we are *Erie*-bound by the Georgia Court of Appeals undisturbed ruling in *Coe & Payne* that subsection (c) does not apply retroactively.

*Id.* at 587.

Even if we were to disregard *Thorington's* limited applicability, there were more contacts in *Thorington* than in the case before us. For instance, no allegation was made in this case that appellee was ever in the state of Georgia as was the case in *Thorington*. A contract was not sent into Georgia by appellee nor was a contract executed, notarized and sent back to appellee as was the case in *Thorington*.

Furthermore, *Thorington* involved a commercial situation and is thus different from the non-commercial case before us. The recent United States Supreme Court decision in *Kulko v. Superior Court of California In and For the City and County of San Francisco*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) made a distinction between commercial and non-commercial activity for purposes of determining the scope

---

5. Likewise, there is no jurisdiction under subsection (c). Referring to subsection (c), the court in *Shellenberger* used a reasonableness test and said:

> . . . For example, it is "reasonable" to subject a nonresident to suit in Georgia if, due to some purposeful activity here, he causes a tortious injury to a resident and if *in addition* he "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenues from goods used or consumed or services rendered in this State." Code Ann. § 24–113.1(c) . . . It is rather in those cases wherein the sole "contact" between the nonresident and the forum is the activity giving rise to the resident plaintiff's cause of action (and in those in which the nonresi-

dent's activities with or in the forum exceed a single transaction but do not rise to the level of the legal "fiction" standards) that the question of "reasonableness" in the exercise of jurisdiction takes on true independent significance.

*Shellenberger v. Tanner*, 138 Ga.App. at 405–406, 227 S.E.2d at 272–273.

If anything, it would appear to us the standard of "reasonableness" under subsection (c) would be stricter than that in subsection (b). *See, e. g., Thorington v. Cash*, 494 F.2d 582, 587 (5th Cir. 1974). We need not decide what the parameters of "reasonableness" would be under subsection (c) since under any test of reasonableness, jurisdiction would be improper in this case.

of a state's long-arm statute.[6] As in *Kulko*, this is a non-commercial situation. The act of sending love letters and making phone calls cannot be said to connote an intent to obtain nor expectancy of receiving a corresponding benefit from Georgia that would make fair the assertion of that state's jurisdiction over appellee.

Accordingly, we find the district court was correct in holding that the courts of Georgia have no personal jurisdiction over appellee in California.

AFFIRMED.

---

**6.** In *Kulko v. Superior Court of California In and For the City and County of San Francisco*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) the husband and wife resided in New York, separated, and the wife then moved to California. Under the separation agreement signed in New York, the husband was to keep the children most of the year and was to send support checks to the wife's residence during the time the children were to be with the wife (Christmas, Easter and summer vacations). Both children eventually moved to California with their mother. The wife filed suit against the husband in California seeking an increase in child support payments. The California Supreme Court upheld lower-court determinations adverse to appellant concluding that California had personal jurisdiction over appellant. The United States Supreme Court held that the exercise of jurisdiction by California over appellant would violate the due process clause of the Fourteenth Amendment. The Court followed *Hanson v. Denkla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) stating that the unilateral activity of those who claim some relationship with a non-resident defendant can-

not satisfy the requirement of contact with the forum state and that the defendant must have purposefully availed himself of the privilege of conducting activities within the forum state. The Court in *Kulko* further stated that a father who agrees to allow his children to spend more time in California than was required under a separation agreement, cannot be said to have availed himself of the benefits and protection of California laws. 98 S.Ct. at 1698. The Supreme Court stated that the fact that the husband had previously been in California on several occasions did not subject him to jurisdiction in California. The circumstances in *Kulko* would render unreasonable California's assertion of personal jurisdiction. There was no claim that appellant had caused physical injury ·on either property or persons within the state of California.

. . . the mere act of sending a child to California to live with her mother is not a commercial act and connotes no intent to obtain nor expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State's judicial jurisdiction.