NATIONAL EGG COMPANY, Plaintiff,

v.

BANK LEUMI le-ISRAEL B.M.; and Bank Leumi Trust Co. of New York, Defendants.

Civ. A. No. C80–187.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 18, 1980.

John M. Edwards, Atlanta, Ga., for plaintiff.

Hugh W. Gibert, Atlanta, Ga., for defendants.

## ORDER OF COURT

**CHARLES A. MOYE, Jr., Chief Judge.**

Plaintiff, National Egg Company (National), is a Georgia corporation with its principal place of business in Georgia. Defendant Bank Leumi le-Israel B.M. (Leumi-Philadelphia) is an Israeli bank with its principal offices in Israel and a branch in Philadelphia. Defendant Bank Leumi Trust Co. of New York (Leumi-New York) is a New York bank with principal offices in New York. Plaintiff alleges in its complaint (¶¶ 2 and 3) that the defendants are subject to this Court's jurisdiction by reason of their transaction of business and tortious activity in Georgia.[1] Subject matter jurisdiction is allegedly based upon diversity of citizenship. Venue is purportedly proper here under 28 U.S.C. § 1391(a) because the plaintiff resides in the Northern District of Georgia and because the claim arose in the Northern District of Georgia.

Plaintiff has alleged that defendants conspired to defraud it by misrepresenting to it the financial condition and solvency of Quality Egg Products Company, Inc. (Quality) "knowingly and for the sole purpose of inducing the Plaintiff to deliver eggs to Quality Egg on credit terms." ¶ 7. In furtherance of the alleged conspiracy, defendants purported to have Quality grant defendants a security interest in the eggs Quality was receiving from National. ¶ 8. In addition, National asserts that both defendants represented to it that (1) certain checks made by Quality to National had been dishonored erroneously, (2) that there were sufficient funds to pay the checks if they were redeposited, and (3) that plaintiffs should rely upon Leumi-Philadelphia's representations to that effect.[2] ¶ 9. Next, plaintiff asserts that it supplied $806,182.79 worth of eggs to Quality in justifiable reliance upon the previously mentioned representations. ¶ 10. Plaintiff also alleges that "Leumi[3] held checks issued on the Quality Egg account and payable to the Plaintiff for an unreasonable length of time...." ¶ 12. "As a direct result of Leumi's[4] misrepresentations and wrongdoing as aforesaid, Leumi[5] was able to seize funds ... which otherwise would have and should have been paid to Plaintiff for eggs delivered." ¶ 13. In addition, to these allegations of fraud and conspiracy to defraud in count one, the plaintiff has set forth claims of legal fraud (count two) and negligence

---

1. In its brief of April 16, 1980, at p. 3, the plaintiff disavows any reliance upon the former theory of personal jurisdiction.

2. Prior to paragraph 9 and within paragraph 9, plaintiff refers to defendants as "defendants" or as "Leumi and Leumi-New York." In connection with the footnoted allegation, the plaintiff refers only to "Leumi's representation."

According to paragraph 2, "Leumi" is Bank Leumi le-Israel B.M., the party referred to in this order as Leumi-Philadelphia.

3. *See* note 2 *supra.*

4. *See* note 2 *supra.*

5. *See* note 2 *supra.*

(count three) incorporating the factual allegations set forth above.

Presently before the Court are (1) defendants' motion to dismiss for failure to state a claim or alternatively for more definite statement and (2) defendants' motion to dismiss or alternatively for transfer to a more convenient forum.

## I. *SPECIFICITY OF PLEADINGS*

██ Fed.R.Civ.P. 9(b) provides that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 8(a), of course, requires only that the complaint set forth a "short and plain statement of the claim." Rule 9(b) is not intended to abrogate the basic pleading requirements of Rule 8(a). *Elster v. Alexander*, 75 F.R.D. 458, 461 (N.D.Ga.1977); 2A *Moore's Federal Practice* ¶ 9.03 at p. 9–28 (2d ed. 1979); 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1298 at p. 407 (1969). The competing policies underlying Rules 9(b) and 8(a) are best resolved by requiring averments of fraud to state such matters as the time, place and content of the alleged misrepresentations as well as who made the alleged misrepresentations to whom. *Elster*, 75 F.R.D. 458, 461–62; 2A *Moore's, supra*, ¶ 9.03 at p. 9–23; 5 *Wright & Miller, supra*, § 1297 at p. 403. It is also necessary to plead fraudulent conspiracy with enough specificity to inform multiple defendants of facts forming the basis for a charge of conspiracy. *Elster*, 75 F.R.D. 458, 461–62. In the instant case, the plaintiff has not pleaded these matters with sufficient specificity.

██ The Court held oral argument on the motion to dismiss for lack of personal jurisdiction on June 4, 1980. Although the plaintiff had engaged in significant discovery on the jurisdictional issue, the Court had great difficulty in understanding the plaintiff's factual allegations, particularly those factual allegations concerning the involvement of Leumi-Philadelphia in any fraudulent conspiracy. The facts have been made considerably clearer in plaintiff's post argument briefs. Even though the briefs make the facts clear enough for the Court to rule on the jurisdictional question, the Court believes that the difficulty incurred in understanding the motion to dismiss is an additional reason for concluding that the complaint pleads fraud with insufficient specificity. Accordingly, plaintiff is hereby ORDERED to file an amended complaint within twenty (20) days setting forth with particularity the matters mentioned above.[6]

## II. *PERSONAL JURISDICTION*

It may seem anomalous to proceed to the jurisdictional issue prior to the plaintiff's amending its complaint, but as previously indicated, the plaintiff's post-hearing briefs, supported by citations to the factual record, provide a sufficient basis for concluding that the motion to dismiss must be DENIED. Following is a description of the facts developed through discovery.

It appears from the record that the statement in paragraph 9 of the complaint which plaintiff alleges to be a misrepresentation was made, if at all, by Lawrence Epstein, formerly assistant vice president of Leumi-New York, to Charles B. Cooper, Jr., executive vice president and general manager of plaintiff National. It further appears that the alleged misrepresentation was made during a phone conversation between Mr. Epstein in New York and Mr. Cooper in Georgia and that the call was initiated by Mr. Epstein. (Mr. Cooper's affidavit does not state that he was in Georgia, but the briefs of both parties assume this fact. Mr. Epstein testified that he did not know who initiated the phone call, but Elliot S. Robinson, a vice president of Leumi-New York, testified that Leumi-New York had a telephone bill for the call.) Moreover, Mr. Epstein discussed the call with his supervisor Howard Ross before making it.

---

**6.** It is unclear whether the Court should deem this ruling as pertaining to the motion to dismiss or the motion for more definite statement. *See* 5 *Wright & Miller, supra*, § 1300.

The direct role of Philadelphia bank in the alleged fraud is limited. It returned Quality Egg checks to plaintiff and other Georgia businesses, and allegedly it did so wrongfully. In addition, however, there are significant links between Leumi-Philadelphia and Leumi-New York. First, Leumi-Philadelphia is a majority shareholder in Leumi-New York. Second, the Philadelphia bank had a security interest in the inventory of Quality. Inasmuch as Leumi-New York also had such a security interest, there was an arguable identity of interest between the two banks. Finally, before Mr. Epstein made his call to Mr. Cooper, Irving Feldman, vice president and senior loan officer at Leumi-Philadelphia, informed Leumi-New York that Quality checks were iin overdraft status.

In addition to the activities thus far described, both banks have engaged in other relationships with Georgia companies in the course of their banking business. For example, Leumi-Philadelphia provided checking account services to Sunbelt Industries, Inc. It sent Mr. Feldman to Georgia to enforce a security agreement with Sunbelt, and it has filed a lawsuit against Sunbelt and another Georgia company, Telfair Farms, in the United States District Court for the Southern District of Georgia. Also, Leumi-Philadelphia held a note from Northeast Poultry and Egg Farm, another Georgia company, as security for a loan to Quality. Finally, the New York bank maintains a correspondent account in Georgia with the First National Bank of Atlanta.

In sum, then, the defendants conduct at least a small part of their banking business with Georgia companies, and to some extent, they do so in Georgia. Presently at issue is whether they do so to such an extent that the plaintiff may establish personal jurisdictional over them in Georgia.

█ The burden of "proof" on the question of personal jurisdiction lies with the plaintiff. Plaintiff may rest on jurisdictional allegations in the complaint unless the defendant controverts those allegations with a factual showing. In that event, the plaintiff has the burden of going forward with sufficient factual evidence to establish a *prima facie* showing of the jurisdictional allegations. *Walker v. Newgent*, 583 F.2d 163, 166 (5th Cir. 1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979); *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977), *Data Disc, Inc. v. Systems Technology Assoc's, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490–91 (5th Cir. 1974); *Jetco Electronics Indus., Inc. v. Gardner*, 473 F.2d 1228, 1232 (5th Cir. 1973); *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971); *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 & n.4 (2d Cir. 1966); *Atlanta Coliseum, Inc. v. Carling Brewing Co.*, 411 F.Supp. 253, 255 (N.D.Ga.1976). *See also J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246, 1248 (D.Kan.1978) (procedure described above used but because required by state law); *Strickland v. Foundation Life Ins. Co.*, 129 Ga.App. 614, 616, 200 S.E.2d 306 (1973) (burden of proof open question). This standard for ruling upon the motion to dismiss notwithstanding, the plaintiff still must prove the jurisdictional facts by a preponderance of the evidence at trial. *Data Disc*, 557 F.2d 1280, 1285 n.2; *Montreal Trust*, 358 F.2d 239, 242 n.4. *See also Jetco*, 473 F.2d 1228, 1232 n.4. (Although the footnote in *Jetco* actually speaks of subject matter jurisdiction, the Fifth Circuit has recognized that the *Jetco* case really dealt with personal jurisdiction. *Product Promotions*, 495 F.2d 483, 490.)

### A. *Leumi-New York*

With respect to Leumi-New York, the jurisdictional issue evolves into a discrete but difficult legal question: does the Court have personal jurisdiction over a defendant whose only significant contact with the state of Georgia is the single telephone conversation described above. After carefully considering the relevant authorities, the Court concludes that the question should be answered in the affirmative.

█ It is, of course, well-accepted that establishment of personal jurisdiction in this diversity case requires satisfaction of

the Georgia long-arm statute as well as the due process clause of the United States Constitution. *E. g., Attwell v. LaSalle Nat. Bank*, 607 F.2d 1157, 1160 (5th Cir. 1979). *See Shingleton v. Armor Velvet Corp.*, 621 F.2d 180 (5th Cir. 1980), *Thorington v. Cash*, 494 F.2d 582 (5th Cir. 1974). Plaintiff maintains that jurisdiction is proper under the "tortious act" provisions of the long-arm statute which provide as follows:

A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

. . . . .

(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State . . . .

Ga.Code Ann. 24–113.1(b), (c). The controversy over the relationship between (b) and (c) is well known and need not be reiterated here. *See e. g., Swafford v. Avakian*, 581 F.2d 1224, 1227 n.5 (5th Cir. 1978); *Thorington, supra*, 494 F.2d 582, 585–86, *Atlanta Coliseum*, 411 F.Supp. 253; *Thornton v. Toyota Motor Sales U.S.A., Inc.*, 397 F.Supp. 476, 480, n.3 (N.D.Ga.1975), for discussions of the problem. Fortunately, the Supreme Court of Georgia has recently resolved any remaining controversy. In *Clarkson Power Flow, Inc. v. Thompson*, 244 Ga. 300, 260 S.E.2d 9 (1979), the Court reaffirmed its earlier decision in *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973), holding that subsection (b) applies to a tortious act or omission occurring outside Georgia causing an injury

in Georgia. 244 Ga. 300, 300–01, 260 S.E.2d 9. *Accord, Atlanta Coliseum, supra; Thornton, supra; Timberland Equip. Ltd. v. Jones*, 146 Ga.App. 589, 246 S.E.2d 709 (1978); *Value Engineering Co. v. Gisell*, 140 Ga.App. 44, 230 S.E.2d 29 (1976); *Shellenberger v. Tanner*, 138 Ga.App. 399, 227 S.E.2d 266 (1976). *Clarkson* also reaffirmed the principle that the Georgia long-arm statute extends personal jurisdiction to the maximum extent allowed by due process. 244 Ga. 300, 300, 260 S.E.2d 9. *Accord, Shingleton*, 621 F.2d 180, 182; *Hollingsworth v. Cunard Line Ltd.*, 152 Ga.App. 509, 512, 263 S.E.2d 190 (1979).

One of the best explanations of long-arm jurisdiction under § 24–113.1(a) is found in *Shellenberger v. Tanner, supra*. There the court of appeals wrote:

Extrapolating from the Supreme Court's decision in *Coe & Payne* and the due process analysis of Division 1 of this opinion, jurisdiction over a nonresident defendant may be exercised by virtue of Code Ann. § 24–113.1(b) when: (1) The nonresident has purposefully done some act or consummated some transaction with or in the forum (but the actual act or omission resulting in the injury here need not have occurred in this state). The defendant need not be physically within the forum when this act or transaction occurs and a single such instance may suffice; (2) The Georgia plaintiff must have a legal cause of action in tort against the nonresident, which arises out of, or results from, the purposeful activity of the defendant involving this state; a resident is a victim of a "tortious act" when he suffers an injury here due to an act or omission of negligence occurring outside this state; and (3) If the requirements of (1) and (2) are satisfied, the exercise of jurisdiction over the nonresident must be "reasonable."

138 Ga.App. 399, 407, 227 S.E.2d 266.

The real difficulty lies in defining what is "reasonable." The *Shellenberger* court noted as an example that it would be "reasonable" to assert jurisdiction over someone who causes a tortious injury in Georgia if that

person "regularly does or solicits business...." *Id.* at 406, 227 S.E.2d 266, *quoting* Ga.Code Ann. § 24–113.1(c). Similarly, the Supreme Court has noted that "limitations similar to those present in subsection (c) are constitutionally mandated under subsection (b) because of due process limitations on the exercise of personal jurisdiction." *Clarkson,* 244 Ga. 300, 301, 260 S.E.2d 9.

The defendants in this case argue that *Clarkson* signals new restrictions on the exercise of jurisdiction over non-residents who commit torts outside the state causing tortious injury inside the state. They emphasize that the *Clarkson* court recognized due process limitations on subsection (b) "similar" to those spelled out in (c), and that the court "conclude[d] that there is no essential difference between subsections (b) and (c)." *Id.* at 302, 260 S.E.2d 9. This Court disagrees with defendants' interpretation of *Clarkson.* The similarity or lack of difference between (b) and (c) only refers to the requirement under both subsections that the exercise of jurisdiction be reasonable and thus in accord with due process of law.

There are several cases in the state and federal courts, both in Georgia and elsewhere, stating that a single misrepresentation sent into the forum state from outside the forum state and causing injury therein is a sufficient basis for the assertion of long-arm jurisdiction. *Shingleton, supra; Thorington, supra, Marvin L. Walker & Assoc's, Inc. v. A. L. Buschman, Inc.,* 147 Ga. App. 851, 250 S.E.2d 532 (1978). *Accord, Murphy v. Erwin-Wasey,* 460 F.2d 661 (1st Cir. 1972); *J.E.M. Corp. v. McClellan,* 462 F.Supp. 1246 (D.Kan.1978). *But see Margoles v. Johns,* 483 F.2d 1212 (D.C.Cir.1973) (rejecting *Murphy, supra,* as matter of statutory construction); *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974) (2–1 decision, following *Margoles* ). The Court cannot rely on any of the above cases in entirety, however. In *Shingleton,* 621 F.2d 180, 182, and in *Thorington,* 494 F.2d 582, 585, there were contacts with Georgia other than the fraudulent misrepresentations made from outside of Georgia. Indeed, the Fifth Circuit expressly distinguished *Thor-*

*ington* for precisely this reason in *Swafford,* 581 F.2d 1224, 1227. Although *Swafford* involved an interstate misrepresentation, that case is not controlling either, because the domestic fraud at issue in *Swafford,* unlike commercial fraud, involves no intent or expectancy to obtain benefits from Georgia "that would make fair the assertion of that state's jurisdiction...." *Id.* at 1227–28, citing *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

Like *Thorington* and *Shingleton, Buschman* possibly involved more than a single contact. The *Buschman* opinion itself mentions none, but the subsequent citation to the *Buschman* case in *Hollingsworth* may indicate otherwise. 152 Ga.App. 509, 515, 263 S.E.2d 190. Moreover, the *Buschman* court relied upon both subsection (b), 147 Ga.App. 851, 853, 250 S.E.2d 532, and subsection (c), *id.* at 854, 250 S.E.2d 532. Finally, the *Murphy* and *J.E.M.* cases, though persuasive, are not controlling. There is thus no clear, binding authority on the question whether the introduction of a single misrepresentation into Georgia from out of state is a sufficient basis for the assertion of personal jurisdiction. Because the Georgia courts hold that the reach of the Georgia long-arm statute is coextensive with the scope of the due process clause, it is necessary to turn to a recent United States Supreme Court case construing the due process limitations on the assertion of personal jurisdiction in the context of an interstate tort.

In *World-Wide Volkswagen Corp. v. Woodson* the issue was

whether, consistently with the Due Process Clause of the Fourteenth Amendment, an Oklahoma court may exercise *in personam* jurisdiction over a nonresident automobile retailer and its wholesale distributor in a products liability action, when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma. 444 U.S. 286, 288, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980).

The plaintiffs in *World-Wide* bought a new Audi automobile in New York from defendant Seaway. A year later they were injured in the car while driving through Oklahoma, and they filed a products liability case in Oklahoma against the retailer Seaway, Seaway's wholesaler World-Wide, and others. Neither Seaway nor World-Wide had any connection with Oklahoma other than to sell the car which allegedly caused an injury in that state. Writing for a 6–3 majority, Mr. Justice White began his analysis by reaffirming that "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *Id.* 100 S.Ct. at 564, *citing International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). He noted that even though modern transportation and communications have made state lines irrelevant for some commercial purposes, the federal nature of our government and the due process clause demand respect for those boundaries in the assertion of personal jurisdiction. *Id.* 100 S.Ct. at 565. More specifically, the Court held that foreseeability that a product will cause injury in a given state is not sufficient reason to hold the seller of the product subject to the jurisdiction of that state. *Id.* 100 S.Ct. at 566.

This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. The Due Process Clause, by ensuring the "orderly administration of the laws," gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* 100 S.Ct. at 567 (citations omitted).

The Fifth Circuit has likewise emphasized the significance of a defendant's intent with respect to the defendant's amenability to personal jurisdiction. *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1110 & n.5 (5th Cir. 1976), *citing Murphy*, 460 F.2d 661, 664. Here, of course, plaintiff alleges that defendant Leumi-New York intentionally defrauded it, and there is sufficient evidence in the record for the Court to determine that plaintiff has proved this allegation *prima facie*. The defendant Leumi-New York was engaging in commercial relations with plaintiff. When it became necessary to conduct those activities *in* Georgia, Mr. Epstein discussed the matter with his supervisor and nevertheless proceeded. If the risk of deliberately engaging in an activity in Georgia had been thought so high that Leumi-New York could not defend a lawsuit here, then it could have simply "sever[ed] its connection with the state." 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490.

### B. *Leumi-Philadelphia*

With respect to the question of jurisdiction over Leumi-Philadelphia, the plaintiff's theory of jurisdiction seems to hinge on allegations of conspiracy between the two defendants. Plaintiff contends, of course, that Leumi-Philadelphia participated in a fraudulent conspiracy, and that Leumi-New York's alleged telephonic misrepresentation in Georgia was a part thereof. Plaintiff also argues that Leumi-Philadelphia has engaged in acts in furtherance of the conspiracy. Finally, plaintiff points to defendant Leumi-Philadelphia's contacts in Georgia which are unrelated to this lawsuit.

 The parties have not briefed the "conspiratorial theory of jurisdiction," and the Court's research into the matter has revealed considerable confusion on the part of the many district courts which have dealt with the problem. There is little or no doubt that, under some sets of circumstances, nonresident co-conspirator (A) who has had no direct contacts of his own with the forum may be held subject to the jurisdiction of the forum's courts, provided that another co-conspirator (B) is subject to the forum court's jurisdiction. *See e. g.* cases cited in note 7 *infra. See also Cherokee Lab's, Inc. v. Rotary Drilling Svcs., Inc.*, 383 F.2d 97, 103 (5th Cir. 1967), *cert. denied*, 390 U.S. 904, 88 S.Ct. 816, 19 L.Ed.2d 870 (1968). The notion that jurisdiction can be based upon conspiracy is premised upon the principle that co-conspirators are liable for the tortious acts of one another just as if they had done the tortious act(s) themselves. *E. g., McLaughlin v. Copeland*, 435 F.Supp. 513, 529–30 (D.Md.1977); *Ghazoul v. Int'l Mgmt. Svcs., Inc.*, 398 F.Supp. 307, 311–12 (S.D.N.Y.1975); *Turner v. Baxley*, 354 F.Supp. 963, 975 (D.Vt.1972). The problem arises in determining what the plaintiff must allege or show factually with respect to the co-conspirators' respective forum contacts and/or knowledge thereof.[7]

---

**7.** *See Grove Press, Inc. v. CIA*, 483 F.Supp. 132, 136 (S.D.N.Y.1980) ("The plaintiffs must, however, 'come forward with some definite evidentiary facts to connect the defendant with transactions occurring in [the forum].' " *quoting, Socialist Workers Party v. Attorney General*, 375 F.Supp. 318, 321, 322 (S.D.N.Y.1974)); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 564–65 (M.D.N.C.1979) (plaintiff must show that "substantial acts in furtherance of the conspiracy were performed in the forum state and the co-conspirator knew or should have known that acts would be performed in the forum state."); *Ammon v. Kaplow*, 468 F.Supp. 1304, 1312 (D.Kan.1979) (plaintiff must allege conspiracy, in non-conclusory fashion, having foreseeable consequences in forum, *citing, Professional Investors Life Ins. v. Roussel*, 445 F.Supp. 687, 696 (D.Kan.1978)); *Louis Marx & Co. v. Fuji Seiko Co., Ltd.*, 453 F.Supp. 385, 391–92 (S.D.N.Y.1978) (no jurisdiction where there is "no allegation of specific facts warranting even an inference that Fuji was a member of any alleged conspiracy."); *Merkel Assoc's., Inc. v. Bellofram*, 437 F.Supp. 612, 617–18 (N.D.N.Y.1977) (showing of "business interrelationship" insufficient); *McLaughlin*, 435 F.Supp. 513, 529–33; *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144, 151 (D.D.C.1976) (jurisdiction over conspirators satisfied if plaintiff shows acts by one conspirator done in forum resulting in injury in forum, *citing Mandelkorn v. Patrick*, 359 F.Supp. 692, 696 (D.D.C.1973); *Hitt v. Nissan Motor Co., Ltd.*, 399 F.Supp. 838, 847–49 (S.D.Fla.1975); *Ghazoul*, 398 F.Supp. 307, 311–14 (S.D.N.Y. 1975) (follows *Socialist Workers Party*, 375 F.Supp. 318, 321–22); *Turner*, 354 F.Supp. 963, 973–77 (issue is whether nonresident conspirator knew or should have known that his non-forum activities would have effect in forum); *Maricopa County v. American Petrofina, Inc.*, 322 F.Supp. 467, 469 (N.D.Cal.1971); *Leasco Data Processing Equip. Corp. v. Maxwell*, 319 F.Supp. 1256, 1261–62 (S.D.N.Y.1970) ("To meet due process requirements there must be a factual showing of a conspiracy and also of a connection between the acts of the conspirator who was present in the jurisdiction and the conspirator who was absent."), *aff'd*, 468 F.2d 1326, 1343 (2d Cir. 1972), *citing, Bertha Bldg. Corp. v. National Theatres Corp.*, 248 F.2d 833, 836 (2d Cir. 1957), *cert. denied*, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 and *H. L. Moore Drug Exch., Inc. v. Smith, Kline & French Lab's.*, 384 F.2d 97 (2d Cir. 1967)).

The *Bertha* and *H. L. Moore* cases are seminal cases with respect to personal jurisdiction and venue under the antitrust laws. The Fifth Circuit seems to agree with *Bertha* and *H. L. Moore. See San Antonio Tel. Co. v. American Tel. & Tel. Co.*, 499 F.2d 349, 35 fn.3. *Contra, Giusti v. Pyrotechnic Ind's.*, 156 F.2d 351 (9th Cir. 1946). The antitrust conspiracy cases are distinguishable, however, because jurisdiction under those cases depends upon actual business presence rather than upon the tortious effects of a conspiracy. *Mandelkorn*, 359 F.Supp. 692, 696 n.8.

In this case one alleged co-conspirator, Leumi-New York, has engaged in an act in Georgia, which, if proven, would be an intentional tort. Leumi-Philadelphia has engaged in several acts arguably pursuant to the conspiracy. First, it notified Leumi-New York that Quality's checks were overdrawn. Second, it returned Quality's checks to plaintiff. Finally, Leumi-Philadelphia had a strong identity of interest with Leumi-New York because (1) it owns a majority of Leumi-New York's stock, and (2) it, like Leumi-New York, owned a security interest in Quality's inventory. In addition to these acts which are arguably in furtherance of the conspiracy, Leumi-Philadelphia has engaged in substantial commercial activities in Georgia which are unrelated to this suit. Finally, having notified Leumi-New York that Quality's checks were overdrawn, Leumi-Philadelphia should have expected the New York bank to act on the knowledge, and it is precisely that act (the phone call) which provides the essence of plaintiff's claims. In view of all of the above, the conclusion is inescapable that Leumi-Philadelphia should have foreseen that it could have to come to Georgia to defend a lawsuit involving these commercial activities. The Court thus need not attempt precisely to define the level of co-conspirator contacts and/or knowledge thereof which satisfy due process.

For all the reasons stated in Part II of this order, the Court hereby DENIES the motion to dismiss for lack of personal jurisdiction.

### III. VENUE

Defendants have also moved to transfer this case pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York or the District Court of Pennsylvania (apparently referring to the Eastern District of Pennsylvania). Plaintiff correctly contends in its brief of April 16, 1980 that under section 1404 the transferee district must be one in which the action "might have been brought." It further maintains that venue is not proper in New York or Pennsylvania. Defendants have not responded to this argument in either the two briefs they filed subsequent to April 16 or in oral argument. As the argument appears to be meritorious and unopposed the Court hereby DENIES the motion to transfer.

### IV. SUMMARY

The motion concerning the specificity of the pleadings,[8] is GRANTED. The motion to dismiss for lack of jurisdiction is DENIED. The motion to transfer is DENIED.