GENERAL ELECTRIC CREDIT
CORPORATION, Plaintiff,

v.

SCOTT'S FURNITURE WAREHOUSE
SHOWROOM, INC., Alabama Furni-
ture and Appliance, Inc., Marshal L.
Campbell and Betty K. Campbell, De-
fendants.

No. 1:86–cv–2075–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 28, 1988.

Patti H. Bass, Wallace & De Mayo, Atlanta, Ga., for plaintiff.

Robert Paul Hein, Fowler Hein & Daum, Atlanta, Ga., for defendants.

## ORDER

MOYE, Senior District Judge.

The above-styled action is before this Court pursuant to the Court's order of March 17, 1987, directing the parties to file cross-motions for summary judgment on the issue of piercing the corporate veils of the two corporate defendants. Pursuant to the aforementioned order, this case is also before the Court for further consideration of the defendants' motion to dismiss this action as to defendants Marshal Campbell ("Campbell") and Betty Campbell due to lack of personal jurisdiction. Finally, this case is before the Court on the plaintiff's motion to supplement its summary judgment motion.

The consideration of these issues has led the Court to reconsider sua sponte its earlier order denying the defendant's motions to dismiss this action as to the corporate defendants due to lack of personal jurisdiction. For the reasons stated below, the Court VACATES its order of March 17, 1988, to the extent that the order denies the defendants' motion for dismissal due to lack of personal jurisdiction. Furthermore, this action is DISMISSED for lack of personal jurisdiction over the defendants. Therefore, the parties' cross-motions for summary judgment on the issue of piercing the corporate veil, as well as the plaintiff's motion to supplement its motion for summary judgment, are now MOOT.

## I. FACTS

This diversity action was commenced against the defendants, Scott's Furniture Warehouse Showroom, Inc. ("Scott's") and Alabama Furniture & Appliance, Inc. ("AFA"), for breach of contracts providing for inventory financing through the plaintiff, General Electric Credit Corporation ("GECC"), and for breach of guaranties that Marshal and Betty Campbell had entered into with GECC pursuant to the inventory financing for Scott's and AFA. The parties have had the opportunity to conduct extensive discovery pursuant to an earlier order extending the period of time for discovery by three months up to and including May 18, 1987. Therefore, the Court finds that the parties have had ample opportunity to discover the relevant jurisdictional facts of this case.

GECC is a New York corporation in the business of extending credit for inventory financing. The plaintiff has an office located in Atlanta, Georgia at which GECC apparently processed and administered the agreements which are the subject of this action.

AFA and Scott's are closely held Alabama corporations with their principal places of business in Mobile, Alabama. The defendant corporations are engaged in the business of operating retail furniture and appliance outlets that sell to consumers in the Mobile, Alabama area. Marshal and Betty Campbell appear to own most, if not all, of the stock in the two defendant corporations. Marshal has served as president of the corporate entities, and Betty has served as secretary.

The pivotal issue involved in the Court's reconsideration of the defendants' motion to dismiss for lack of personal jurisdiction concerns the extent to which the defendants have contacts with the state of Georgia which relate to the contracts involved in this action.[1] It is undisputed that neither the defendants nor their agents entered the state of Georgia in connection with the soliciting, negotiation, or consummation of the financing agreements and guaranties which are the subject of this action. The parties are in agreement that any contract which the defendants may have had with the plaintiff's Atlanta office in the state of Georgia was by mail or telephone.

The aforementioned facts weigh against the exercise of personal jurisdiction over the defendants by this Court. On the other

---

1. *See e.g., Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) and *Shellenberger v. Tanner,* 138 Ga.App. 399, 227 S.E.2d 266 (1976).

hand, the contracts involved in this case apparently produced an ongoing inventory financing arrangement between the parties. Furthermore, some of the contracts specifically provided that Georgia law would govern the terms of their performance, although others provided that either Georgia or New York law would apply.

Unfortunately, the parties do not agree on some of the crucial facts. The affidavits submitted by the parties are in conflict as to whether the plaintiff or the defendants initiated the transactions which are the subject of this action. Furthermore, it appears that the parties disagree as to the location of the plaintiff's agents and offices with which the defendants dealt and to which payments under the agreements were sent.

The affidavit of Dan Cox ("Cox"), an inventory finance, credit and collection manager for the plaintiff's Atlanta office, asserts in ¶ 7:

> That the Defendant Marshal L. Campbell initiated the dealings between the parties in regard to the Inventory Financing Agreements which form the basis of this action.

Cox's affidavit does not give any specific details of how or why the defendants initiated the dealings between the parties other than his assertions in ¶ 9 of the affidavit where he states:

> That the Defendants have submitted credit applications and financial information to the Plaintiff's Atlanta, Georgia office seeking credit approval.

In contrast to Cox's broad assertion that the defendants initiated the dealing between the parties, Marshal Campbell, in his affidavit of March 9, 1987, asserts that, prior to pursuing and entering into financing arrangements with GECC, he was visited at Scott's furniture outlet in Mobile, Alabama by an agent of GECC, Bill Davis ("Davis"). Marshal Campbell further asserted that the purpose of Davis' visit was to solicit Campbell's business for GECC. Campbell's affidavit goes on to state that Davis came to see Marshal Campbell on several occasions and submitted several proposals to Campbell concerning invento-

ry financing arrangements through GECC. The plaintiff has had numerous opportunities to expressly deny these factually specific allegations by Marshal Campbell; however, the plaintiff has only been able to assert that Davis is based out of the plaintiff's Atlanta office.

The parties are also in conflict as to where payments under the financing agreement and guaranties were sent. In ¶ 6 of his affidavit of March 9, 1987, Marshal Campbell stated:

> General Electric Credit Corporation maintains an office in Mobile, Alabama, and all of our transactions and negotiations with them were always handled directly with General Electric Credit Corporation's office in Mobile, and, as I have said, I haven't done business in Georgia and I don't know why I am being sued in Georgia.

On the other hand, in ¶'s 5 and 6 of his affidavit, Cox asserts:

> 5.
>
> That Plaintiff does not have an office in Mobile, Alabama, nor any other office in Alabama.
>
> 6.
>
> That the Atlanta, Georgia office handles all credit matters and is responsible for all collection efforts in regard to the subject matter business transactions of this lawsuit.

Whether or not the plaintiff has an office within the state of Alabama, it appears from Marshal Campbell's affidavit that he believed he was dealing principally with a GECC office located in Mobile, Alabama.

## II. THE STANDARD FOR GRANTING THE DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND CONSIDERATION OF EVIDENCE

### A. Standard for Granting Defendant's Motion

The standard for granting a motion to dismiss for lack of personal jurisdiction, made near the institution of litigation and

before substantial discovery, is clearly established in this circuit. A motion to dismiss for lack of personal jurisdiction should be denied if the plaintiff has alleged sufficient facts to support a reasonable inference that the defendant(s) can be subjected to the jurisdiction of the Court. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986); *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103 (11th Cir.1982). However, in cases such as the one at bar where the Court is considering the issue of personal jurisdiction after there has been sufficient opportunity to discover jurisdictional facts, a different standard applies.

As this Court held in *National Egg Company v. Bank Leumi le-Israel B.M.*, 504 F.Supp. 305, 309 (N.D.Ga.1980):

> The burden of "proof" on the question of personal jurisdiction lies with the plaintiff. Plaintiff may rest on jurisdictional allegations in the complaint unless the defendant controverts those allegations with a factual showing. In that event, the plaintiff has the burden of going forward with sufficient factual evidence to establish a prima facie showing of the jurisdictional allegations. (citations omitted). This standard for ruling upon the motion to dismiss notwithstanding the plaintiff still must prove jurisdictional facts by a preponderance of the evidence at trial. (citations omitted).

*See also, Welt Industries, Inc. v. Weingart, Inc.*, 660 F.Supp. 424 (N.D.Ga.1987). There has been substantial opportunity for the discovery of jurisdictional facts in the present case, and therefore, the standard articulated in *National Egg* applies to the resolution of the defendant's motion to dismiss.

### B. The Consideration of Evidence

■ The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Washington v. Norton Manufacturing Co.*, 588 F.2d 441, 443 (5th Cir.1979). In considering the evidence, the allegations of the complaint, except insofar as controverted by opposing affidavits,

must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case for personal jurisdiction has been established. *See, Black v. ACME Markets, Inc.*, 564 F.2d 681, 683 n. 3 (5th Cir.1977); C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 1351, 1363 (1969 & Supp. 1984). However, mere conclusory statements cannot be relied upon to establish the prima facie case on the issue of personal jurisdiction. *Barrett v. United States*, 646 F.Supp. 1345 (S.D.N.Y.1986), *citing, Newmark v. Abeel*, 102 F.Supp. 993, 994 (S.D.N.Y.1952).

■ Mere averments of jurisdiction are not enough nor may conclusory, unsupported statements contained in accompanying affidavits be relied upon to demonstrate jurisdiction. *Holfield v. Power Chemical Company, Inc.*, 382 F.Supp. 388, 390 (D.Md.1974). Furthermore, affidavits based on personal knowledge are to be credited over contradictory allegations based merely on information and belief, and facts adduced in opposition to jurisdictional allegations are considered more reliable than mere *contentions* offered in support of jurisdiction. *Barrett*, 646 F.Supp. at 1350.

### III. REQUIREMENTS FOR THE EXERCISE OF PERSONAL JURISDICTION

It is well established that the exercise of personal jurisdiction in diversity cases such as this one requires satisfaction of both the due process clause of the United States Constitution and the Georgia long-arm statute. *E.g., National Egg*, 504 F.Supp. at 309–10, *citing, Attwell v. LaSalle National Bank*, 607 F.2d 1157, 1160 (5th Cir.1979). Decisions in both the Georgia state courts and the federal courts indicate that there is an unresolved question as to whether the requirements of the Georgia long-arm statute are coextensive with the requirements of the due process clause. Therefore, the Court will first address the issue of whether the plaintiff has asserted a prima facie

case for the exercise of personal jurisdiction under the due process clause.

## A. Requirements of Constitutional Due Process

The Supreme Court of the United States has repeatedly attempted to articulate the requirements of the due process clause of the United States Constitution as it concerns the exercise of personal jurisdiction over nonresident defendants in state court actions and diversity actions in federal court. In the comparatively recent case of *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court addressed the exercise of specific personal jurisdiction [2] by a federal court based on contractual transactions pursuant to a state long-arm statute in a diversity suit. The Court held that the "constitutional touchstone" for determining whether the exercise of personal jurisdiction is consistent with the requirements of constitutional due process remains whether the defendant(s) purposefully established "minimum contacts" in the forum state. *Id.* 471 U.S. at 474, 105 S.Ct. at 2183, *citing, International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[3] If it is determined that the defendants have "purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice'." *Id.* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160).

One question important in determining whether the defendant has purposefully established minimum contacts with the forum is whether the defendant's conduct and connection with the forum state are such that he should "reasonably anticipate" being haled into court there. *Id., citing, World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). The defendant should reasonably anticipate out-of-state litigation where by some act he "purposely avails" himself of the privilege of conducting activities within the forum state, thus involving the benefits and protections of its laws. *Id., citing, Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). This "purposeful availment" requirement is designed to ensure that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Id.*

The Supreme Court in *Burger King* found that the requirements of the due process clause were not offended by the exercise of personal jurisdiction over Rudzewicz. The Court stressed the fact that the defendant had initiated contact between the parties by applying to the plaintiff's local office in Michigan for a franchise, knowing full well that he was availing himself of the benefits of associating with a national corporation whose center of operations was far away in Florida. Therefore, the Court found that by eschewing the option of operating a local enterprise, the defendant had deliberately "reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long term franchise and the manifold benefits

**2.** Specific personal jurisdiction is founded on a parties contacts with the forum state that are related to the cause of action. *DeLong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 853 (11th Cir.1988). There are two types of personal jurisdiction: general and specific. *Id., citing, Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–17 and n. 8, 9, 104 S.Ct. 1868, 1872–74 n. 8, 9, 80 L.Ed.2d 404 (1984). This case is not one for the exercise of general personal jurisdiction. General personal jurisdiction arises from "continuous and systematic" contacts with the forum which do not exist in the present case. In cases where the exercise of general personal jurisdiction is appropriate, a court may exercise jurisdiction over

matters unrelated to the defendant's contacts with the forum. *Id.*

**3.** "The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–2, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

that would derive from affiliation with a nationwide organization." *Id.* 471 U.S. at 479–80, 105 S.Ct. at 2186. The Court further stressed the nature of the relationship between the parties where Burger King had extensive control over the operations of the Michigan franchise.

The present case is clearly distinguishable on its facts from *Burger King*. First, based on the affidavits submitted by the parties in this case on the issue of personal jurisdiction, this Court finds that the Campbells did not "deliberately reach out beyond" Alabama as did the defendant in *Burger King*. In the case at bar, GECC made the initial contact by sending one of its agents to Alabama in order to solicit the business of the defendants.[4] Second, it appears that the parties entered into at least preliminary negotiations in Mobile, Alabama. Third, statements in Campbell's affidavit indicate that the defendants believed they were dealing primarily with a GECC office located in Mobile, Alabama. Finally, the nature of the relationship between the parties was different from that in *Burger King*. The franchise agreement in *Burger King* involved extensive regulation and control of the defendant's entire business. In the present case, the financing agreements and guaranties involved only those matters pertinent to the extension of credit for inventory financing.

On the other hand, the facts of the present case and those in *Burger King* are not wholly dissimilar. In both cases, the defendants established a continuing contract relationship with parties in another forum so that the contacts with that other forum cannot *readily* be characterized as "random," "fortuitous," or "attenuated." Furthermore, in each case, the contracts in issue have choice of law provisions which provide for the application of the law of the jurisdiction in which the suit was filed.[5] In both cases, payments made by the defendants pursuant to the particular contracts were sent to the plaintiffs in the forum where jurisdiction is being asserted. Finally, there were multiple contacts between the parties by phone and/or mail.

The facts of the present case put it in the proverbial twilight of constitutional due process analysis as applied to the assertion of personal jurisdiction. The *Burger King* Court stated that:

> [W]e note a continued division among the lower courts respecting whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. (citations omitted) ... we have emphasized the need for a "highly realistic" approach ...

*Id.* 471 U.S. at 478, 105 S.Ct. at 2185. In a case such as the present one where the claim arises out of or is related to a defendant's contacts with the forum, the Court must consider the relationship between the defendant, the forum, and the litigation to determine whether the exercise of personal jurisdiction is consistent with due process. *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir.1986). Courts look to the factors such as negotiations prior to contract execution, contemplated future consequences, terms of the contract, and the parties actual course of dealing to determine whether a defendant has purposefully established minimum contacts with a forum. *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985).

■ Applying the principles reviewed above, this Court finds that GECC has not made out a prima facie case for the asser-

---

4. Although Cox asserts in his affidavit that the defendants initiated the dealings between the parties, this assertion is contradicted by more precise factual assertions appearing in Campbell's earlier affidavit. Furthermore, Cox's assertion is conclusory in nature, because it implicitly denies Campbell's more specific factual assertions. However, the plaintiff has failed to specifically or directly deny Campbell's statements concerning visits to Mobile by Davis even though it has had numerous opportunities to do so. As the Court has discussed *supra*, Camp-

bell's uncontroverted specific factual assertions are credited over Cox's conclusory assertion that the defendants initiated contact between the parties.

5. However, some of the contracts in the case at bar provide for the application of either N.Y. or Georgia law, whereas it appears that the contracts in *Burger King* provided only for the application of the law of the forum state.

tion of personal jurisdiction over the defendants. The plaintiff signed contracts which called for the application of Georgia law; however, the provisions contemplate choice of law, not forum, and do not in and of themselves evince the defendants' anticipation of being haled into a Georgia court especially where some of the contracts provide that New York law will apply. It is without question that the plaintiff could not successfully argue that the defendants anticipated being haled into a New York court. Given the fact that both New York and Georgia choice-of-law provisions appear in the contracts, the presence of Georgia choice-of-law clauses does not indicate that the defendants anticipated litigation in Georgia. At best, the choice-of-law provisions may be said to represent one of several contacts that warrant consideration in determining whether personal jurisdiction should be asserted over the defendants. *Stuart,* 772 F.2d at 1195.

Despite the Georgia choice of law provisions in the contracts, the facts presented by the parties bear out that the focus of activity between the parties was in the state of Alabama. *See, Groome v. Feyh,* 651 F.Supp. 249, 256 (S.D.Fla.1986). The plaintiff solicited the defendants' business at the Campbells' furniture store in Alabama. It appears that preliminary negotiations occurred in Mobile, Alabama. Neither the defendants nor their agents entered the state of Georgia at any time in connection with the dealings between the parties. The defendants signed the contracts in Alabama. Furthermore, the contracts signed by the parties were executed in order to provide for the financing of inventory located solely in Alabama which was to be sold to consumers in the Mobile market. Finally, Campbell maintains in his affidavit that he believed he was dealing with a GECC office located in Mobile.

The plaintiff asserts that because payments were sent to GECC's Atlanta Office, the contracts were performed in Georgia,

and thus the requisite minimum contacts are present. However, there is a substantial body of case law indicating that the agreement to mail payment checks into a forum state does not weigh heavily in the calculus of contacts. *E.g., Sea Lift, Inc. v. Refinadora Costarricense,* 792 F.2d 989, 994 (11th Cir.1986). Finally, the plaintiff asserts that through continuing communications by mail and telephone with GECC's Atlanta office concerning the financing agreements in issue over a period of roughly two years, the defendants have purposefully directed their activities at the state of Georgia. However, there is case law which refutes this assertion as well. In *Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184, 187–8 (5th Cir.1978) and *Benjamin v. Western Boat Building Corporation,* 472 F.2d 723, 728–30 (5th Cir.1973), the Fifth Circuit held that similar communications between the parties in those cases could not be characterized as purposeful activity invoking the benefits and protections of the law of the forum in question. In *Charia* and *Benjamin* the Fifth Circuit stressed the fact that the locus of the contract, as in the present case, was outside the forum. Furthermore, in these cases the court held that the location of the completion of the contracts in question, accomplished by mailing payments to the forum, was not controlling as the location where payment is sent is often fortuitous.

The remaining factor which has caused this Court some concern is the continuing nature of the financing relationship between GECC and the defendants. This continuing contract relationship makes the present case more similar to the facts of *Burger King* than many of the cases in which the lower courts have before or since denied personal jurisdiction. However, the facts of this case, unlike the facts in *Burger King,* show that the plaintiff initiated the relationship between the parties.[6]

The Eleventh Circuit has stated that:

---

**6.** This Court draws its primary distinction between this case and *Burger King* on the basis that GECC solicited the Campbell's business. In fact, it appears that the defendants *believed* they were dealing primarily with a GECC office in

Mobile. Furthermore, the Campbells availed themselves of no discernable benefit by borrowing from a national financing institution, as opposed to a local one, and apparently did so solely due to the plaintiff's solicitation. In

**914**

The Supreme Court also emphasized that it was the actions of the defendant *himself* that must create a "substantial connection" with the forum in order to satisfy the requisite contact element and not "the unilateral activity of those who claim some relationship with a non-resident defendant." (footnote omitted) 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542 [rest of citation omitted].

*Johnston v. Frank E. Basil, Inc.*, 802 F.2d 418 (11th Cir.1986). The defendants did not initiate contact with the Atlanta office, nor was contact between the parties initiated in Georgia, and the contracts in question were focused entirely within Alabama. The fact that GECC, a New York corporation, happened to have an office in Georgia where payments were received and from which it administered the credit which it extended to the defendants, does not indicate that the defendants were *purposefully directing* their activities toward this forum. Furthermore, the nature of the relationship between the parties is much less extensive than in *Burger King*.[7] In this case the relationship between the parties involves the extension credit, as opposed to the comprehensive franchise agreement which was entered into in *Burger King*.

*Burger King,* the Supreme Court noted that the defendant had obviously gained the benefits of affiliating with a national chain. The Supreme Court stated:

> Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc., supra,* 465 U.S. [770], at 781, 104 S.Ct. [1473] at 1481 [79 L.Ed.2d 790 (1984) ], or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia,* 339 U.S. [643], at 648, 70 S.Ct. [927], at 929 [94 L.Ed. 1154 (1950) ], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 475–6, 105 S.Ct. at 2184. The question is whether by entering into a financing agreement with the plaintiff pursuant to the plaintiff's soliciting efforts, the defendant has "deliberately" engaged in significant activities in Georgia. Neither *Keeton* nor *Travelers* is on point as the defendants in those cases acted independently and not pursuant to the plaintiff's solicitation.

Therefore, the Court holds that the facts of this case place it outside the requirements, as set forth in *Burger King,* for the exercise of personal jurisdiction under the due process clause of the United States Constitution.

As previously discussed, there exist in this case a number of contacts between the defendants and the state of Georgia which relate to this litigation. However, weighing the totality of circumstances, the Court finds that the plaintiff has not presented a prima facie case for the exercise of specific personal jurisdiction over the defendants by this Court. The plaintiff through its agent went into the state of Alabama and solicited a contract with the defendant for the financing of inventory located solely within Alabama. The choice-of-law provisions, the mail and telephone contacts, payments to GECC's Atlanta office, and the continuing nature of the credit extended do not change the fact that the focus of the contracts, as well as the plaintiff's solicitation and the defendants' consummation of the contracts, was outside the state of Georgia. The defendants did not *purposefully direct* their activities toward this forum.

The *Burger King* Court further stated:

> And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). See also *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–21, 2 L.Ed.2d 223 (1957).

Again, neither *Travelers* nor *McGee* is particularly helpful in resolving the jurisdictional question in this case because the defendants in those cases independently "reached out" to residents of another forum. Furthermore, in the above cited cases, the forum in which suit was brought had much greater interest in providing its residents with a convenient forum in which to bring suit than exists in the present case. Those cases involved nonresident defendants who were insurers of the resident plaintiffs.

7. "The quality of the contacts as demonstrating purposeful availment is the issue ..." *Stuart,* 772 F.2d at 1194.

Moreover, even assuming that the contacts between the defendants, the forum and the litigation indicate that the defendants directed their activities toward Georgia, the contacts in this case fall short of those required to satisfy the additional consideration of "fair play and substantial justice." The burdens on the defendants to litigate in a foreign forum are significant and outweigh the convenience to GECC of suing in Georgia simply because it has an office here. Additionally, Alabama has a strong interest in redressing wrongs arising from a contract that is focused in Alabama.

### B. Requirements of the Georgia Long–Arm Statute

■ The Court has found that the contacts between the defendants, the forum and the litigation do not satisfy the requirements of constitutional due process for the exercise of specific personal jurisdiction. Therefore, it may seem unnecessary to consider this case under the requirements of the Georgia long-arm statute. However, in view of: 1) the character of the facts in this case, 2) the evasive, uncertain and fact intensive nature of due process analysis of personal jurisdiction questions, and 3) the added factor that the Georgia long-arm statute may require greater contacts with this forum for the assertion of specific personal jurisdiction in cases based on contract transactions than does the due process clause; consideration of the requirements of the Georgia long-arm statute is warranted.

Even if the requirements of constitutional due process for the exercise of personal jurisdiction were met by the facts of this case, dismissal for lack of personal jurisdiction under the Georgia long-arm statute is still proper for the reasons stated below. The plaintiff has asserted that the exercise of personal jurisdiction over the defendants by this Court is proper under O.C.G.A. § 9–10–91(1). This section provides that a Georgia court may exercise personal jurisdiction over a nonresident defendant if he "[t]ransacts any business within this state" and the cause of action arises from that transaction of business within the state.

The Georgia Supreme Court expanded upon the transacting business section of the Georgia long-arm statute in *Davis Metals, Inc. v. Allen,* 230 Ga. 623, 198 S.E.2d 285 (1973). The *Davis* court held that personal "... jurisdiction over a nonresident exists on the basis of transacting business in this state if the nonresident has purposefully done some act or consummated some transaction in this state, if the cause of action arises from or is connected with such act or transaction, and if the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.,* 230 Ga. at 625, 198 S.E.2d 285. This Court holds that it does not have personal jurisdiction over the defendants under the Georgia long-arm statute after considering the totality of circumstances and a number of divergent state and federal decisions that apply O.C.G.A. § 9–10–91(1). *See, Algemene Bank Nederland, M.V. v. Mattox,* 611 F.Supp. 144 (N.D.Ga.1985) ("... it is clear that the Georgia courts consider the 'totality of circumstances.' "), *citing, Brooks Shoe Manufacturing, Inc. v. Byrd,* 144 Ga.App. 431, 433, 241 S.E.2d 299 (1977).

In a number of federal cases, the courts have stated that the Georgia long-arm statute extends personal jurisdiction over nonresident defendants to the constitutional maximum in contract actions as well as in tort actions. If these statements were followed, then the constitutional due process analysis alone would be sufficient to determine whether the exercise of personal jurisdiction is appropriate. However, for the reasons stated below this Court finds that "transacts any business" subsection of the Georgia long-arm statute requires more contacts between the defendants, the forum, and the litigation for the assertion of specific personal jurisdiction than does federal due process.

In cases where jurisdiction is based on the defendants' tortious act, there is no question that the Georgia long-arm statute gives Georgia courts the power to exercise specific personal jurisdiction over nonresident defendants to the full extent allowed by constitutional due process. *E.g., Coe & Payne Company v. Wood–Mosaic Corpo-*

*ration,* 230 Ga. 58, 60, 195 S.E.2d 399 (1973). However, the extension of personal jurisdiction over nonresident defendants in contract actions, such as the present one, is dealt with in a different subsection of the Georgia long-arm statute than the extension of personal jurisdiction in tort cases. *E.g., Lutz v. Chrysler Corporation,* 691 F.2d 996, 997 (11th Cir.1982); *Delong Equipment Company v. Washington Mills Abrasive,* 840 F.2d 843, 848 (11th Cir.1988) ("It is clear, however, that the 'transacts any business' test of O.C.G.A. § 9–10–91(1) applies only to contract claims." [citations omitted]). Furthermore, it is settled that activity in Georgia which will support the exercise of personal jurisdiction in a tort suit need not be as extensive as that required in contract cases where the nonresident defendant must have "transacted business" in Georgia in connection with the plaintiff's claim. *E.g., Delong,* 840 F.2d at 848; *Swafford v. Avakian,* 581 F.2d 1224, 1226 (5th Cir.1978); *Shellenberger v. Tanner,* 138 Ga.App. 399, 408, 227 S.E.2d 266 (1976).

In *Gold Kist Inc. v. Baskin–Robbins Ice Cream,* 623 F.2d 375, 378 (5th Cir.1980), the Eleventh Circuit reached the conclusion that the Georgia courts had implicitly interpreted the Georgia long-arm statute as being coextensive with due process in contract actions against nonresident defendants. The court's conclusion in *Gold Kist* appears to contradict prior and subsequent decisions in which the court held that the Georgia long-arm statute's "transacts any business" provision requires greater contacts between the defendant and the state than required under the statute's provisions relating to tort claims. *See, Swafford,* 581 F.2d at 1226; *Delong* 840 F.2d at 848. However, the *Gold Kist* court stated that there was no inconsistency with its previous decisions because the previous cases were simply recognizing that constitutional due process requires greater contacts between the defendant and the forum for the exercise of personal jurisdiction in contract cases than in tort cases. *Gold*

*Kist,* 623 F.2d at 378 ("... this result obtains as readily under the due process clause as under the Georgia long-arm act."). Whether or not the Georgia long-arm statute extends the exercise of personal jurisdiction to the limits of constitutional due process, it is clear that the statute requires greater contacts between the defendant and the forum in contract cases than in tort cases.[8]

On the other hand, in *Irving Commercial Corp. v. Sound Floor Coverings,* 595 F.Supp. 536 (N.D.Ga.1984), the District Court, Harold L. Murphy, J., declined to follow the *Gold Kist* opinion to the extent that it extended the Georgia long-arm statute to the limits of constitutional due process in contract actions. Judge Murphy found that the district court was not bound by the *Gold Kist* court's statement of the law because it was merely dicta unnecessary in rendering the decision. *Id.* at 540-1. This Court is in agreement with Judge Murphy's analysis. *See, Gold Kist,* 623 F.2d at 378 ("Our application of § 24–113.1 to the facts of this case need not rely on our equating its reach to the limits of due process, however."). The *Irving* opinion gives several examples of cases in which the Georgia courts had interpreted the Georgia long-arm statute as requiring something more than constitutional due process. *Irving,* 595 F.Supp. at 538–539, citing, *O.N. Jonas Company, Inc. v. B & P Sales Corp.,* 232 Ga. 256, 206 S.E.2d 437 (1974); *Wise v. State Board for Examination, Qualification & Registration of Architects,* 247 Ga. 206, 274 S.E.2d 544 (1981) (reaffirming *Jonas* after the decision of *World–Wide Volkswagen, supra*); *Process Systems Inc. v. Dixie Packaging Co., Inc.,* 137 Ga.App. 452, 456, 224 S.E.2d 103 (1976) ("... the *transacting business* statutes may be narrower than the limits of due process, ..."). Furthermore, the Georgia cases on which the *Gold Kist* court relied for extending the Georgia long-arm statute to the constitutional due process limits were *tort* cases in which the provi-

---

**8.** Though given the opportunity, the United States Supreme Court has not explicitly held that due process requires additional contacts in

contract cases beyond those required in tort cases. *See, Burger King, supra.*

sions applying to *torts* were so extended. *See, Gold Kist,* 623 F.2d at 378, *citing, Coe,* 230 Ga. at 60, 195 S.E.2d 399.

It is difficult to articulate a standard for determining what it is to "transact business" in Georgia based on the mass of divergent decisions. However, this Court has found that personal jurisdiction in contract cases under the Georgia statute is narrower than constitutional due process requires. As noted, *supra,* Georgia courts seem to consider a totality of circumstances and make case by case, fact specific decisions in personal jurisdiction determinations.

Georgia courts appear to place more weight on the defendant's physical presence or absence in the state during some phase of the soliciting, negotiation, consummation or performance of the contract that is the subject of the action than appears to be required by the United States Supreme Court's *Burger King* decision discussed above. *See e.g., Wise,* 247 Ga. at 209, 274 S.E.2d 544; *O.N. Jonas,* 232 Ga. at 257, 206 S.E.2d 437; *Superior Fertilizer & Chemical v. Warren,* 162 Ga.App. 595, 597, 292 S.E.2d 430 (1982); *Graphic Machinery v. H.M.S. Direct Mail Service,* 158 Ga.App. 599, 600, 281 S.E.2d 343 (1981). The defendants in this case have never entered the state of Georgia in connection with the transactions which are the subject of this action. Furthermore, the Court has found that the plaintiff solicited the defendant's business outside the forum. The totality of circumstances do not weigh in favor of the exercise of personal jurisdiction over the defendants.

The appropriateness of dismissing this action for lack of personal jurisdiction is best illustrated by comparing the present action with *Capital Associates, Inc. v. Gallopade Enterprises International, Inc.,* 172 Ga.App. 504, 323 S.E.2d 842 (1984). The facts of the *Capital* case are more similar to the facts in the present action than any of the other cases found by the Court. Furthermore, the *Capital* court affirmed the dismissal for lack of personal jurisdiction of a Georgia plaintiff's action against a South Carolina defendant.

In *Capital,* the Georgia plaintiff brought an action against the South Carolina defendant under the Georgia long-arm statute. The action was based on the defendant's breach of a lease agreement for a copying machine. The lease contract in *Capital* was a continuing contractual relationship as are the financing contracts in the present case. The *Capital* contract was solicited, negotiated, and consummated outside Georgia, as were the contracts in the present case. The *Capital* lease contract was accepted by the plaintiff's Atlanta office, also as in the present case. In addition, the defendant's payments under the contract were sent to Atlanta as in the present case. Therefore, where dismissal for lack of personal jurisdiction was proper in *Capital,* so is dismissal appropriate in this case.

## IV. CONCLUSION

For the reasons stated above, the Court VACATES its order of March 17, 1988, to the extent that the order denies the defendant's motion for dismissal. Furthermore, the action is DISMISSED without prejudice due to lack of personal jurisdiction over the defendants. Therefore, all pending motions in this case are rendered MOOT. The clerk is DIRECTED to close this case.

SO ORDERED.