**CABLE NEWS NETWORK, INC., Plaintiff,**

v.

**VIDEO MONITORING SERVICES OF AMERICA, INC., Defendant.**

**Civ. A. No. 1:88–CV–2660–JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

June 23, 1989.

June Ann Kirkland and William T. Plybon, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiff.

Stephen M. Schaetzel, Jones, Askew & Lunsford, Atlanta, Ga., for defendant.

ORDER

FORRESTER, District Judge.

This matter is before the court on defendant's motion to dismiss, Fed.R.Civ.P.

12(b)(2), (3); and plaintiff's motion for preliminary injunction. Fed.R.Civ.P. 65(a); 17 U.S.C. § 502(a).

## I. STATEMENT OF FACTS.

The parties to this action are plaintiff Cable News Network, Inc. (CNN), a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia, and defendant Video Monitoring Services of America, Inc. (VMS), a New York corporation with its principal place of business in New York. Plaintiff is in the business of producing news programming which it transmits via satellite to viewers worldwide. Defendant is in the business of monitoring the news and public interest programming of television and radio stations throughout the country and, on request of the customer, providing a videotape copy of a particular broadcast. By its four-count complaint, plaintiff charges defendant with violations of federal copyright and communications laws, as well as state deceptive trade practices and unfair competition laws. The court's subject matter jurisdiction is predicated upon 28 USC §§ 1331 and 1332. The facts giving rise to this action are as follows.

On October 17, 1988, plaintiff transmitted a television program called "Cross Fire" featuring Senator Barry Goldwater which defendant is alleged to have "captured" and copied. On October 26, 1988, an employee of plaintiff, Alma Sanders, contacted defendant via telephone at its Miami, Florida office and placed an order for a videotape copy of the October 17, 1988 program. The order was placed on behalf of an entity called "Sanders and Company." Defendant accepted Ms. Sanders' order and mailed to Sanders and Company at its Atlanta, Georgia address an invoice dated October 27, 1988 requesting payment in the amount of $130.00 for the videotape. The videotape was received at the Atlanta, Georgia offices of Sanders and Company on November 2, 1988. Ms. Sanders subsequently forwarded a check in the amount of $130.00 in payment of the invoice to defendant which defendant endorsed and deposited November 14, 1988.

Plaintiff contends that the above-described facts are sufficient to confer personal jurisdiction over defendant under the Georgia long-arm statute, O.C.G.A. § 9–10–91. Defendant, on the other hand, argues that personal jurisdiction is lacking on the grounds that (1) it does not maintain an office in Georgia; (2) it has no employees or sales representatives in Georgia; (3) it does not manufacture any product or perform any services in Georgia; (4) it does not derive any substantial revenue from the State of Georgia; (5) it monitors plaintiff's broadcasts from its New York and California offices; (6) it videotaped the program in question at its New York office; and (7) it sold the videotape in question from its Miami, Florida office.

## II. CONCLUSIONS OF LAW.

### A. *Defendant's Motion To Dismiss.*

Under Rule 12(b)(2), the plaintiff bears the burden of proving the existence of *in personam* jurisdiction. *Welt Industries, Inc. v. Weingart,* 660 F.Supp. 424, 425 (N.D.Ga.1987) (Shoob, J.). As a general rule, a motion to dismiss for lack of personal jurisdiction should be denied if the complaint alleges sufficient facts to support a reasonable inference that the defendant can be subjected to the jurisdiction of the court. *General Electric Credit Corp. v. Scott's Furniture Warehouse Showroom, Inc.,* 699 F.Supp. 907, 910 (N.D.Ga. 1988) (Moye, J.). If, however, the defendant makes a factual showing controverting the jurisdictional allegations of the complaint, the plaintiff must come forward with sufficient factual evidence to establish a *prima facie* showing of jurisdiction. *Welt Industries,* 660 F.Supp. at 425. In the present case, plaintiff contends that the uncontroverted allegations of the complaint are sufficient to confer jurisdiction over defendant.[1] Plaintiff argues alternatively that in the event the court determines additional evidence is required, that it should be

---

**1.** Under Rule 12(b)(2), all allegations of the complaint not specifically controverted by the defendant's evidence must be taken as true. *General Electric Credit Corp.,* 699 F.Supp. at 910.

permitted discovery [2] regarding the extent of defendant's activities in Georgia.

■■■ A federal court may assert jurisdiction over a nonresident defendant only to the extent allowed by the long-arm statute of the forum state.[3] *Southwire Company v. Trans–World Metals and Company, Ltd.,* 735 F.2d 440, 442 (11th Cir.1984); *Payne v. Kristofferson,* 631 F.Supp. 39, 41 (N.D.Ga.1985) (Evans, J.). In addition, the exercise of jurisdiction pursuant to such state law requires satisfaction of the due process clause of the Fourteenth Amendment to the United States Constitution. *Id.* The standard therefore includes issues of state and federal law.

The state law relevant to this analysis is the Georgia long-arm statute, O.C.G.A. § 9–10–91. This statute provides,

A court of this state may exercise personal jurisdiction over any non-resident ... as to a cause of action arising from any of the acts [or] omissions ... enumerated in this code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1) transacts any business within this state;

(2) commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) owns, uses, or possesses any real property situated within this state; or

(5) with respect to proceedings for alimony, child support, or division of property in connection with an action for divorce or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action, whether cohabiting during that time or not.

The first question presented by defendant's motion concerns the proper subsection of the long-arm statute to apply to this case. Because subsections (4) and (5) are clearly inapplicable, the court will limit its inquiry to subsections (1), (2) and (3).

### 1. Subsection (1).

■■■ Subsection (1) permits the exercise of jurisdiction over non-resident defendants if he "transacts any business within this state." This subsection has been interpreted as applying to contract actions only, however. *Delong Equipment Company v. Washington Mills Abrasive,* 840 F.2d 843, 848 (11th Cir.1988) (citing *Whitaker v. Krestmark of Alabama, Inc.,* 157 Ga.App. 536, 537–38, 278 S.E.2d 116 (1981)). For the purposes of the Georgia long-arm statute, actions brought in federal court for copyright infringement are considered tort actions. *Payne,* 631 F.Supp. at 43; *Psychological Resources Support Systems v. Gerleman,* 624 F.Supp. 483, 485 (N.D.Ga. 1985) (Moye, J.); *see also Porter v. United States,* 473 F.2d 1329, 1337 (5th Cir.1973). Subsection (1) is therefore unavailable to

---

**2.** Defendant filed its motion to dismiss in lieu of an answer to plaintiff's complaint. Fed.R.Civ.P. 12(a). Consequently, no discovery has been conducted in this action.

**3.** The court is aware of at least one court in this district which has held that when a federal court has federal question jurisdiction over an action, it need not resort to the forum state's long-arm statute to resolve questions of personal jurisdiction. *Vest v. Waring,* 565 F.Supp. 674 (N.D.Ga.1983) (Tidwell, J.). This holding is based on two decisions of the new Fifth Circuit Court of Appeals, both of which have since been overturned. *See Terry v. Raymond Internation-*

*al, Inc.,* 658 F.2d 398 (5th Cir.1981) (Unit A), *cert. den.,* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982), and *Lapeyrouse v. Texaco, Inc.,* 693 F.2d 581 (5th Cir.1982), *overturned in Point Landing, Inc. v. Omni Capital International, Ltd.,* 795 F.2d 415 (5th Cir.1986). Moreover, it conflicts with the personal jurisdiction analyses of other courts in this district exercising federal question jurisdiction. *See Payne,* 631 F.Supp. 39; *Psychological Resources Support Systems v. Gerleman,* 624 F.Supp. 483 (N.D.Ga. 1985) (Moye, J.) For these reasons, the court declines to follow *Vest.*

plaintiff as a means of subjecting defendant to the jurisdiction of this court.

## 2. Subsection (2).

Recent state and federal decisions construing subsection (2) of the Georgia long-arm statute have rendered its application to the facts of this case uncertain. To resolve the question, the court will undertake to examine the history of the Georgia long-arm statute as it pertains to the exercise of personal jurisdiction over non-resident tortfeasors.

From March 10, 1966 until July 1, 1970, the Georgia long-arm statute provided for the exercise of personal jurisdiction over non-resident tortfeasors only where the "tortious act or omission" was committed "within this state." Ga.Code Ann. § 24–113.1, Ga.L.1966, p. 343. The Georgia Court of Appeals undertook to interpret this provision in 1969. In *O'Neal Steel, Inc. v. Smith*, 120 Ga.App. 106, 169 S.E.2d 827 (1969), the court considered two widely differing views. The first, now known as the "Illinois rule," [4] provided that the term "tortious act" includes both the wrongful conduct complained of and the damage caused thereby. Thus, if either the act or omission or its consequences occur within the state, the tortious act is committed "within the state" for the purposes of the long-arm statute. The second view, called the "New York rule," [5] provided that the statute must be read literally to require that the wrongful act complained of occur within the state. Applying general principles of statutory construction, the *O'Neal Steel* court adopted the New York rule.

In response to this strict judicial application of subsection (2), the Georgia General Assembly added subsection (3) to the long-arm statute in 1970 to allow for the exercise of personal jurisdiction over non-resident tortfeasors in instances where the tort was committed outside the state but caused injuries within the state. Ga.Code Ann. § 24–113.1, Ga.L.1970, p. 443. Jurisdiction was conditional, however, on a finding that the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Id.*

In 1973, the Georgia Supreme Court granted certiorari in three cases to address the lower court's interpretations of subsection (2). Each case involved the commission of a tort outside the state but causing injuries to the plaintiffs within the state. Subsection (3) was unavailable to these plaintiffs, because each tort was alleged to have occurred prior to its effective date. Applying the New York rule adopted in *O'Neal Steel*, the lower courts dismissed for want of personal jurisdiction. The Supreme Court reversed. Relying on public policy and the decisions of other state courts, the Court rejected a literal reading of subsection (2). Embracing the Illinois rule, the Supreme Court reasoned that the term "tortious act" as used in subsection (2) included both the conduct complained of and the damage caused thereby. *Coe and Payne Co. v. Wood–Mosaic Corp.*, 230 Ga. 58, 62, 195 S.E.2d 399 (1973). Thus, the exercise of personal jurisdiction was authorized under subsection (2) of the long-arm statute so long as the conduct complained of caused injury to the plaintiff within the state, regardless of where the conduct itself occurred. In overturning the court of appeals decision in *O'Neal Steel*, the Court also observed that jurisdiction under subsection (2) may be exercised to the maximum extent permitted by procedural due process.

This interpretation of subsection (2) immediately called into question the continued need for subsection (3) and its additional requirements of certain "minimum contacts." The Supreme Court addressed this problem in 1979 in the cases of *Clarkson Power Flow, Inc. v. Thompson* and *Clarkson Power Flow, Inc. v. Southwest Grease and Oil, Inc.*, 244 Ga. 300, 260 S.E.2d 9 (1979). Instead of distinguishing the two subsections, however, the Court concluded that constitutional due process mandated

---

**4.** Adopted from *Gray v. American Radiator Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

**5.** Adopted from *Feathers v. McLucas*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

that the additional "minimum contacts" requirement of subsection (3) be read into subsection (2) as well. The Court therefore held "that there is no essential difference between [the two] subsections." *Clarkson*, 244 Ga. at 302, 260 S.E.2d 9.

Seven years later, the Georgia Court of Appeals examined the relationship between subsections (2) and (3) of the Georgia long-arm statute in *Flint v. Gust*, 180 Ga.App. 904, 351 S.E.2d 95 (1986). In *Flint*, the appellant, a Georgia resident, responded to an advertisement appearing in a trade magazine distributed in the state. The advertisement, placed by the appellees, a Wisconsin corporation and its president, featured for sale a customized truck and trailer. The appellant filed suit in Georgia for fraud and conversion after the appellees refused to deliver the truck and trailer or to return his $6,000 deposit. Because the record showed that the appellees' only contact with the State of Georgia was the transaction in question, the trial court dismissed the case for want of jurisdiction pursuant to subsection (3). The court of appeals agreed with the trial court's conclusion that jurisdiction could not be predicated on subsection (3), but held that the requirements of subsection (2) had been met. In reaching this conclusion, the court of appeals did what the Supreme Court had declined to do some seven years earlier in the *Clarkson* cases: It distinguished subsections (2) and (3).

In so doing, the court of appeals did not disturb the Supreme Court's interpretation of subsection (3). Rather, the court determined that the "minimum contacts" requirement of that subsection "are not constitutionally mandated in all cases, particularly where the cause of action is based on tort." *Flint*, 180 Ga.App. at 907, 351 S.E.2d 95. The court found support for this conclusion in the fact that the Supreme Court had not expressly renounced its 1973 observation that jurisdiction under subsection (2) may be exercised to the maximum extent permitted by due process. *Id.* Having therefore determined that the *constitutional* "minimum contacts" standard of subsection (2) is substantially lower than the *statutory* "minimum contacts" stan-

dard of subsection (3), and applying the Illinois rule to subsection (2), the court held that the appellees' tortious conduct was sufficient to confer personal jurisdiction over them. *Id.* at 908, 351 S.E.2d 95.

In an opinion issued some seven months later, the Georgia Supreme Court reversed. *Gust v. Flint*, 257 Ga. 129, 356 S.E.2d 513 (1987). In so doing, the court observed that neither a New York rule nor an Illinois rule could be employed to resolve a question of Georgia law. *Gust*, 257 Ga. at 130, 356 S.E.2d 513. The court stated, "The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the state of Georgia before he can be subjected to personal jurisdiction." *Id.* These "certain acts" are plainly set out in the long-arm statute. Because the appellees had not "committed a tortious act or omission" within the state, they could not be subjected to personal jurisdiction under subsection (2). Similarly, because they had not regularly done or solicited business, engaged in any other persistent course of conduct, or derived substantial revenue from the state, they could not be subjected to personal jurisdiction under subsection (3). Though rejecting the notion that the New York rule was controlling, the court essentially reinstated the decisions in *O'Neal Steel* and its progeny applying a strict reading to subsection (2).

The *Gust* opinion has caused more than a little confusion. Because of its surprising brevity, it could reasonably be interpreted as rejecting the principle of *Coe and Payne Co.* that jurisdiction under subsection (2) should be exercised to the maximum extent permitted by due process. *See, e.g., United States v. Ticor Construction, Inc.*, 702 F.Supp. 1561, 1564 (N.D.Ga.1988) (Freeman, J.). This court believes otherwise. As the above discussion implies, this court reads the *Gust* opinion as renouncing the broad reading of subsection (2) in favor of a literal reading, not as abandoning the view that the subsection should be construed to reach the limits of constitutional due process. *See Quikrete Companies, Inc. v. Nomix Corp.*, 705 F.Supp. 568, 571

n. 2 (N.D.Ga.1989) (Camp, J.). Thus, while subsection (2) is once again available only where the tortious act complained of is committed within the state,[6] the only other restriction on application of the subsection is constitutional due process. Because the "tortious act" complained of in this case; i.e., the alleged copyright infringement, occurred outside the state of Georgia, subsection (2) is unavailable to provide the court with jurisdiction over defendant.[7]

### 3. Subsection (3).

In view of the foregoing, defendant's motion to dismiss must be granted unless it appears that defendant is subject to the personal jurisdiction of the court under subsection (3). As has been seen, this subsection allows for the exercise of personal jurisdiction over a non-resident tortfeasor where he engages in certain acts within the state of Georgia. Thus, if such an individual commits a tortious act or omission outside the state causing damage within the state and (1) regularly does or solicits business or engages in any other persistent course of conduct or (2) derives substantial revenue from goods used or consumed or from services rendered in this state, he is subject to the personal jurisdiction of the courts of this state. In reviewing the jurisdictional allegations of the complaint, however, the court observes that only those facts forming the basis of this action are set out. Because these allegations are insufficient to support a reasonable inference that defendant can be subjected to the jurisdiction of the court under subsection (3), this action is subject to dismissal pursuant to Rule 12(b)(2). *General Electric Credit Corp.*, 699 F.Supp. at 910. In view of the fact that no discovery has been conducted in this action, however, the court rules on defendant's motion to dismiss as follows. Plaintiff's request to permit discovery on the question of the extent of defendant's contacts with the state of Georgia[8] is GRANTED. *See* 2A J. Moore, *Moore's Federal Practice*, ¶ 12.07[2.2] (2d Ed.1987) (court has discretion to permit discovery aimed at establishing personal jurisdiction). Plaintiff shall be allowed thirty days to conduct full discovery on this issue and an additional ten days thereafter in which to supplement the record with evidence supporting its response to plaintiff's motion to dismiss. Defendant would then be allowed ten days in which to reply to plaintiff's response as supplemented. Consideration of defendant's motion to dismiss is therefore STAYED and the Clerk of Court DIRECTED to resubmit defendant's motion to dismiss upon expiration of this time period.

### B. *Plaintiff's Motion For Preliminary Injunction.*

By its motion for preliminary injunction, plaintiff seeks an order enjoining defendant "from copying or selling copies of any of [plaintiff's] programming." Inasmuch as personal jurisdiction over defendant may be lacking, the court declines to reach the merits of plaintiff's motion at this time. Accordingly, consideration of plaintiff's motion for preliminary injunction is likewise STAYED pending resolution of defendant's motion to dismiss.

### III. CONCLUSION.

In sum, consideration of defendant's motion to dismiss and plaintiff's motion for preliminary injunction is STAYED. Plaintiff's request to permit discovery on the question of personal jurisdiction is GRANTED. Plaintiff shall be allowed thirty (30) days to conduct full discovery on this issue. Plaintiff shall have an additional ten (10) days from the close of this discovery period in which to supplement the record with evidence supporting its re-

---

**6.** This holding is consistent with the Georgia law of statutory construction. *See* O.C.G.A. § 1–3–1; *see also Risser v. City of Thomasville,* 248 Ga. 866, 286 S.E.2d 727 (1982).

**7.** Plaintiff cites *Coe and Payne Co.* for its contention that defendant's alleged tortious conduct occurred both inside and outside the state of Georgia since the damage itself occurred within the state. Response at 5–6, n. 2. As previously noted, however, this theory is part of the Illinois rule which the *Gust* court rejected. The tortious conduct in this case therefore occurred in New York and/or Florida. *See Gust,* 257 Ga. at 130, 356 S.E.2d 513.

**8.** Or any other issues relevant to personal jurisdiction.

sponse to plaintiff's motion to dismiss. Defendant would then be allowed ten (10) days in which to reply to plaintiff's response as supplemented. The Clerk of Court is DIRECTED to resubmit defendant's motion to dismiss together with plaintiff's motion for preliminary injunction upon expiration of this time period.

SO ORDERED.